**WOLPA v. UNITED STATES (two cases).\***
Nos. 10526, 10527.

Circuit Court of Appeals, Eighth Circuit.
Nov. 5, 1936.

*Rehearing denied Nov. 25, 1936. Writ of certiorari denied 57 S. Ct. 317, 81 L. Ed. ——.

See, also, 84 F.(2d) 829.

William N. Jamieson, of Omaha, Neb. (Joel O'D. Cornish, of Omaha, Neb., on the brief), for appellants.

Ambrose C. Epperson, Asst. U. S. Atty., of Omaha, Neb. (Joseph T. Votava, U. S. Atty., and Fred G. Hawxby, Asst. U. S. Atty., both of Omaha, Neb., and Barlow Nye, Asst. U. S. Atty., of Lincoln, Neb., on the brief), for the United States.

Before GARDNER, SANBORN, and FARIS, Circuit Judges.

SANBORN, Circuit Judge.

The appellants, Alex Wolpa and Julius J. Wolpa, were indicted, tried, convicted, and sentenced under section 215 of the Criminal Code (18 U.S.C. § 338 [18 U.S. C.A. § 338]) for using the mails to defraud. The convictions were under counts I, II, III, IV, VI, IX, XI, and XIV of the indictment, which charged that the appellants, with other defendants not parties to these appeals, "did devise and intend

to devise a scheme to obtain money and property by means of false and fraudulent pretenses, representations and promises from numerous and sundry persons engaged in the mercantile business, who were and are residents of the different states of the United States; that is to say, those persons engaged in mercantile business who desired to sell their business and their stocks of merchandise and real estate, and who could be induced by the defendants to pay their money to the defendants."

The scheme to defraud is described in the indictment as follows: The appellants, together with the others named as defendants in the indictment, planned to represent to the persons to be defrauded that the Associated Brokerage Company (a trade-name adopted by the appellants), was a business firm engaged as brokers of business properties and business; and planned that they (the defendants) would solicit and enter into contracts with persons engaged in the mercantile business for authority to sell the property of such persons; that the defendants would personally contact the persons to be defrauded and represent that the Associated Brokerage Company had a large list of buyers and had a buyer who would soon purchase the property of the intended victim and that it was necessary for him to give his consent and to pay a sum of money designated as a service charge to the defendants as a token of good faith; and that the defendants would promise each person to be defrauded that the service charge would be refunded in the event that the defendants and the Associated Brokerage Company failed to find a purchaser for his property.

Following the description of the scheme, it is alleged in the indictment that the promises made by the defendants were, and were known by the defendants to be, false and fraudulent, in that the Associated Brokerage Company and the defendants were not brokers of business property and business, and would not have prospective purchasers, and did not intend to carry out any of their promises to the persons to be defrauded; also that "it is apparent and therefore here set forth as a face [fact], that during the times herein alleged" the defendants were not operating in good faith toward the persons whose money they intended to receive and did not intend to give any adequate consideration therefor.

It is then charged in the first count of the indictment "that the said defendants, on or about the 16th day of December, 1932, at Omaha, in Douglas County, in the Omaha division of the District of Nebraska, and within the jurisdiction of this court, so having devised said scheme, for the purpose of executing the same, wilfully, unlawfully and feloniously did knowingly place and cause to be placed in the Post Office of the United States at Omaha aforesaid, to be sent and delivered to the addressee thereof by the post office establishment of the United States, a certain letter then and there addressed and intended by said defendants to be sent and delivered by said post office establishment to Mr. George Pointer, Box 113, Loup City, Nebraska, of the tenor following, to-wit: [the letter, which invites negotiations for the sale of Mr. Pointer's business, is then set out in full]." The other counts of the indictment are substantially the same, except that each involves a different letter or postal card addressed to a different person.

The appellants filed general and special demurrers to the indictment, which were overruled by the court. Upon the trial, the jury found the appellants guilty under counts I, II, III, IV, VI, IX, XI, and XIV, and both were sentenced to three years' imprisonment on each of those counts, the sentences to run concurrently. From the judgments these appeals are taken.

The one specification of error relied upon by the appellants challenges the sufficiency of each count of the indictment. The alleged defects relied upon for reversal are:

(1) The indictment alleges more than one violation of the laws of the United States in a single count.

(2) It fails to name the persons to be defrauded or to give a reason for such failure.

(3) It fails in certain counts to allege that the defendants placed or caused to be placed in the post office of the United States at Omaha, Neb., a certain envelope on which was placed the proper United States postage, having inclosed therein a certain letter.

(4) It fails in other counts to allege that the postal cards mailed by defendants were official government postal cards or that defendants placed the proper United States postage thereon.

(5) It fails to allege that the fraudulent scheme itself included the intended use of the United States mails in its execution.

(6) The scheme as set forth in count I and incorporated in counts II, III, IV, VI, IX, XI, and XIV is not sufficiently clear and certain to enable the defendants to properly prepare their defense, and the charges in those counts are too general, vague, and indefinite to be pleaded as former jeopardy.

■ In considering these alleged defects, it must be kept in mind that the purpose of an indictment is to apprise the accused of the crime charged against him with such reasonable certainty that he can make his defense and not be taken by surprise by the evidence offered at the trial and can be protected after judgment against another prosecution for the same offense. Berger v. United States, 295 U.S. 78, 55 S.Ct. 629, 79 L.Ed. 1314; Claiborne v. United States (C.C.A.8) 77 F.(2d) 682; Laska v. United States (C.C.A.10) 82 F. (2d) 672, 678.

■ 1. Section 338 of title 18, U.S.C. (18 U.S.C.A. § 338), so far as it is here pertinent, provides: "Whoever, having devised *or* intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, * * * shall, for the purpose of executing such scheme or artifice or attempting so to do, place, or cause to be placed, any letter, postal card, package, writing, circular, pamphlet, or advertisement, whether addressed to any person residing within or outside the United States, in any post office, or station thereof, or street or other letter box of the United States, or authorized depository for mail matter, to be sent or delivered by the post office establishment of the United States, or shall take or receive any such therefrom, whether mailed within or without the United States, or shall knowingly cause to be delivered by mail according to the direction thereon, or at the place at which it is directed to be delivered by the person to whom it is addressed, any such letter, postal card, package, writing, circular, pamphlet, or advertisement, shall be fined not more than $1,000, or imprisoned not more than five years, or both." (Italics supplied.)

It is charged in the indictment that the defendants did "devise and intend to devise a scheme" to defraud, and that, for the purpose of executing such scheme, they "placed and caused to be placed" a certain letter in the post office. The appellants contend that this substitution of the conjunctive "and" for the disjunctive "or" found in the statute is a fatal defect because the indictment with the use of the conjunctive charges two offenses in one count.

In Crain v. United States, 162 U.S. 625, 16 S.Ct. 952, 953, 40 L.Ed. 1097, the Supreme Court considered an indictment charging that one Crain did "make, execute, and forge, and cause to be made, executed, and forged," a certain affidavit for the purpose of defrauding the United States. The statute (R.S. § 5421 [see 18 U.S.C.A. § 73]) upon which that prosecution was based was also in the disjunctive and provided a penalty for "every person who falsely makes, alters, forges, or counterfeits; or causes or procures to be falsely made, altered, forged, or counterfeited" any writing for the purpose of defrauding the United States. The following paragraph from the opinion in that case is equally applicable to the case at bar (page 636 of 162 U.S., 16 S.Ct. 952, 955, 40 L.Ed. 1097): "The statute was directed against certain defined modes for accomplishing a general object, and declared that the doing of either one of several specified things, each having reference to that object, should be punished by imprisonment at hard labor for a period of not less than five years nor more than ten years, or by imprisonment for not more than five years and a fine of not more than one thousand dollars. We perceive no sound reason why the doing of the prohibited thing in each and all of the prohibited modes may not be charged in one count so that there may be a verdict of guilty upon proof that the accused had done any one of the things constituting a substantive crime under the statute. And this is a view altogether favorable to an accused who pleads not guilty to the charge contained in a single count, for a judgment on a general verdict of guilty upon that count will be a bar to any further prosecution in respect of any of the matters embraced by it."

In Ackley v. United States (C.C.A.8) 200 F. 217, at page 221, this court, in discussing an indictment for furnishing information concerning the procurement of contraceptives, said: "This particular of-

fense was not known at common law. Being a statutory crime, the indictment must follow the statute creating the offense. The exception is that, if the statute denounces several things as a crime, the different things thus enumerated in the statute being connected by the disjunctive 'or,' the pleader must connect them by the conjunctive 'and' before evidence can be admitted as to more than the one act. To recite that the defendant did the one thing *or* another makes the indictment bad for uncertainty. To charge the one thing *and* another does not render the indictment bad for duplicity, and a conviction follows if the testimony shows the defendant to be guilty of either the one *or* the other thing charged. State v. Dean, 44 Iowa, 648; State v. Spurbeck, 44 Iowa, 667; State v. Paul, 81 Iowa, 596, 47 N.W. 773." See, also, O'Neill v. United States (C.C.A.8) 19 F.(2d) 322, 324; Poffenbarger v. United States (C.C.A.8) 20 F.(2d) 42; Collins v. United States (C.C.A.8) 20 F.(2d) 574, 576; May et al. v. United States (C.C.A. 8) 199 F. 53, 60.

Creel v. United States (C.C.A.8) 21 F. (2d) 690, cited by the appellants, is readily distinguishable. It was there charged that Creel did "sell and furnish" intoxicating liquor contrary to the statute (27 U.S.C.A. § 12) making it a crime to "sell, * * * furnish or possess any intoxicating liquor." The statute provided a different punishment for "selling" than that provided for "furnishing," making it clear that each was a separate offense and not merely a different way of committing the same general offense. It was properly held in that case that the two distinct offenses could not be joined in the same count.

■ 2. The appellants next contend that the failure to name the individuals who were to be defrauded or to state that they were unknown is fatal to the indictment. It may be conceded that such particularity is required where the nature of the scheme imports an intention to defraud a certain person or certain definite individuals; "but where a scheme is to defraud, not definite individuals, but a class, or one individual and others belonging to the same class, who were not selected by the alleged schemer when the scheme was formed, it is not necessary, in alleging the scheme, to name the parties intended to be defrauded, who were not identified by the accused when the scheme was devised and were not capable of definite ascertain-

ment by the pleader." Berry v. United States (C.C.A.5) 15 F.(2d) 634, 635; Gould v. United States (C.C.A.8) 209 F. 730, 735; Hyney v. United States (C.C.A.6) 44 F. (2d) 134; Norcott v. United States (C. C.A.7) 65 F.(2d) 913, 915; Ader v. United States (C.C.A.7) 284 F. 13, 22, 23; Finnegan v. United States (C.C.A.6) 231 F. 561. The intended victims of the appellants' scheme were designated as "persons engaged in the mercantile business, who were and are residents of the different states of the United States." They were sufficiently designated as a class, and there was no need to excuse the omission of their names where it was so obvious that their names were unknown. Ader v. United States (C.C.A.7), supra; Finnegan v. United States (C.C.A.6), supra.

■ 3. The appellants further contend that it should have been alleged in the indictment that the defendants "placed or caused to be placed in the post office of the United States at Omaha, Nebraska, a certain envelope on which said envelope was placed the proper United States postage, having enclosed therein a certain letter." This allegation would have added nothing to the indictment as drawn except the statement that the letter was inclosed in an envelope on which was placed the proper postage. We think such an allegation unnecessary. The statute refers to the placing of a letter or postal card in any post office, to be sent or delivered by the post office establishment of the United States. As was said in Hyney v. United States (C.C.A.6) 44 F.(2d) 134, 136, "When thought of in connection with the post office establishment, the term 'letter' signifies a communication inclosed, sealed, and stamped and being carried as first-class mail."

■ 4. The failure to allege in some of the counts that the postal cards alleged to have been mailed to various persons in the mercantile business were official government postal cards or that the defendants had placed thereon the proper postage is said by the appellants to be a fatal defect.

The issuance of "postal cards" is authorized by 39 U.S.C. § 356 (39 U.S.C.A. § 356), which provides: "To facilitate letter correspondence, and to provide for the transmission in the mails, at a reduced rate of postage, of messages, orders, notices, and other short communications, either printed or written in pencil or ink, the Postmaster General is authorized and

directed to furnish and issue to the public, with postage stamps impressed upon them, 'postal cards,' manufactured of good stiff paper, of such quality, form, and size as he shall deem best adapted for general use; which cards shall be used as a means of postal intercourse, under rules and regulations to be prescribed by the Postmaster General, and when so used shall be transmitted through the mails at a postage charge of 1 cent each, including the cost of their manufacture."

The term "postal card" is defined in Funk and Wagnall's New Standard Dictionary as, "A card bearing a printed stamp and issued by a government as a convenient substitute for paper and envelope." On the same authority, an unofficial card transmissible through the mails on prepayment of the same postage as a postal card is a "post-card."

The term "postal card" as used in the indictment could have conveyed no other meaning than that of an official United States postal card with the postage stamp printed thereon.

■ 5. The appellants' contention that the indictment should have alleged that the fraudulent scheme included the intended use of the United States mails in its execution is based upon cases construing R.S. § 5480, which was repealed when section 215 of the Criminal Code (18 U.S.C.A. § 338), under which the appellants were prosecuted, went into effect. The former statute required that the fraudulent scheme include the intent to use the mails in its execution. However, "there is a distinction between the sections, and the elements of an offense under section 215 are (a) a scheme devised or intended to be devised to defraud, or for obtaining money or property by means of false pretenses, and (b) for the purpose of executing such scheme or attempting to do so, the placing of any letter in any postoffice of the United States, to be sent or delivered by the Postoffice establishment." United States v. Young, 232 U.S. 155, 161, 34 S.Ct. 303, 305, 58 L.Ed. 548. Intent to use the mails in the execution of the scheme is no longer a necessary element. Beck v. United States (C.C.A.8) 33 F.(2d) 107, 111; Newingham v. United States (C.C.A.3) 4 F.(2d) 490, 492, certiorari denied, 268 U.S. 703, 45 S.Ct. 638, 69 L.Ed. 1166; Morris v. United States (C.C.A.8) 7 F.(2d) 785, 789, certiorari denied, 270 U.S. 640, 46 S. Ct. 205, 70 L.Ed. 775; Silkworth v. United States (C.C.A.2) 10 F.(2d) 711, 719, certiorari denied, 271 U.S. 664, 46 S.Ct. 475, 70 L.Ed. 1139; 49 C.J. 1205, § 227.

■ 6. The appellants argue that the scheme as alleged in the indictment was not set forth with sufficient certainty to enable them to properly prepare their defense, and that the charges in the various counts under which they were convicted are too vague and indefinite to support a plea of former jeopardy. They base their contention that the scheme is not alleged with sufficient certainty upon (a) the fact that there is no allegation in the indictment as to the place where the scheme was formed; (b) the use of the word "indulged" in the second paragraph of the indictment wherein it is alleged that the defendants "indulged in transactions in this indictment hereinafter set forth"; and (c) the use of the word "apparent" in the allegation, "And the Grand Jurors further present that it is apparent and therefore here set forth as a face [fact]," that the defendants were not operating in good faith toward the person whose money they intended to receive.

"It is the established rule in this court that while particulars of the scheme are matters of substance and must be described with certainty sufficient to show its existence and character and to fairly acquaint the accused with the particular fraudulent scheme charged against them, the scheme itself need not be pleaded with all the certainty as to time, place and circumstance requisite in charging the gist of the offense, the mailing of the letter or other article in execution or attempted execution of the same." Gardner v. United States (C.C.A.8) 230 F. 575, 578; McClendon v. United States (C.C.A.8) 229 F. 523, 525; Cowl v. United States (C.C.A.8) 35 F.(2d) 794, 797, 798; Colburn v. United States (C.C.A.8) 223 F. 590, 593; Gould v. United States (C.C.A.8) 209 F. 730, 734. The indictment, taken as a whole, sufficiently advised the appellants of the particulars of the scheme to enable them to properly prepare their defense. The use of the words "indulged" and "apparent," when considered in connection with their context and with other allegations of the indictment, does not make it vague or indefinite. On oral argument some point was made of the use of the word "face" instead of the word "fact." This was a mere typographical error which could have misled no one, in view of the context. The

contention that the charges are two uncertain to support a plea of former jeopardy is without merit. It is definitely charged in each count that the appellants, with other defendants, in executing the scheme, did "place and caused to be placed" in the post office a certain letter or postal card, a copy of which letter or postal card is in each count set out, addressed to a certain named person, to be sent and delivered to that person. The fact that all of the defendants, including the appellants, are charged with the commission of each overt act, does not make the charge indefinite. Each defendant definitely is advised that he personally is charged with the performance of all the overt acts described.

Section 269 of the Judicial Code as amended (28 U.S.C. § 391, 28 U.S.C.A. § 391) precludes a reversal of a judgment for mere formal defects in an indictment not affecting the substantial rights of the defendants. Claiborne v. United States (C.C.A.8) supra, 77 F.(2d) 682, at page 690.

The government is entitled to an affirmance of the judgments appealed from if there is a single good count in the indictment. Whitfield v. State of Ohio, 297 U.S. 431, 56 S.Ct. 532, 80 L.Ed. 778; Parente v. United States (C.C.A.8) 82 F.(2d) 722, 725. The appellants have failed to convince us that any count is bad. They were sufficiently advised of the charges against them. They need have no fear of another prosecution for the same offenses.

The judgments are affirmed.