**UNITED STATES of America**

v.

**John VAN ALLEN, Paul Hagenbach, Brandel Trust, Roy B. Kelly, Cecil V. Hagen, Gulf Coast Leaseholds, Inc., Irving H. Hertzberg, F. W. MacDonald & Co., Jules Bean, Singer, Bean & Mackie, Inc., Pierre A. Du Val, Du Val's Consensus, Inc., Charles R. Stahl, De Pontet & Co., Adam Miles, Stahl, Miles & Co., Ltd., Milton J. Shuck, M. J. Shuck Co., Martin Teller and Michael Ackman, Defendants.**

United States District Court
S. D. New York.
June 27, 1961.

Robert M. Morgenthau, U. S. Atty., for Southern Dist. of New York, New York City, for U. S., Jerome J. Londin, Executive Asst. U. S. Atty., New York City, of counsel.

Gallop, Climenko & Gould, New York City, for defendant, John Van Allen, Milton S. Gould, New York City, of counsel.

Albert J. Ahern, Jr., Washington, D. C., Cornelius V. Gallagher, New York City, for defendant, Roy B. Kelly.

Brinsmade & Schafrann, New York City, Blalock, Lohman & Blalock, Houston, Tex., for defendant, Cecil V. Hagen, Jack B. Blalock, Marvin B. Segal, Houston, Tex., of counsel.

Joseph E. Ruggiero, New York City, Mock, Spell & Schenk, Wichita Falls, Tex., for defendant, Gulf Coast Leaseholds, Inc.

Jacob P. Lefkowitz, New York City, for defendants, Irving H. Hertzberg and F. W. MacDonald & Co.

Kaye, Scholer, Fierman, Hays & Handler, New York City, for defendants, Jules Bean and Singer, Bean and Mackie, Inc., Milton R. Wessel, Alan Rosenblat, James M. Brachman, New York City, of counsel.

John F. Dailey, Jr., New York City, for defendants, Pierre A. Du Val and Du Val's Consensus, Inc.

Jay Slonim, New York City, for defendant, Charles R. Stahl.

Irving D. Goodstein, New York City, for defendant, Martin Teller.

CASHIN, District Judge.

The indictment in this case was filed on March 24, 1960. It contains 160 counts, all of which relate to the offer and sale of stock in Gulf Coast Leaseholds, Inc. The gravamen of the indictment is that the mails and interstate wire communications were used to sell these unregistered securities and that such sales were effected by fraud. The indictment names twenty defendants and twenty-eight co-conspirators.

Numerous pre-trial motions have been made by a number of the defendants. For convenience, the motions will be discussed in groups composed of those which present the same or similar issues.

### Discovery and Inspection

Defendants, Du Val, Du Val's Consensus, Inc., Kelly, Stahl, Van Allen, Teller, Bean and Singer, Bean & Mackie, Inc., have all made motions for discovery and inspection under Rules 16 and 17(c) of the Federal Rules of Criminal Procedure, 18 U.S.C.A.

 Rule 16 provides for a very limited discovery. Before the adoption of this rule it was doubtful whether the existing law permitted any discovery in criminal cases. (The Advisory Committee Note to Rule 16). In United States v. Peltz, D.C.S.D.N.Y.1955, 18 F.R.D. 394, Judge Herlands discusses the history of Rule 16 and concludes quite correctly that it was not intended to give a defendant an unlimited right of discovery and inspection. Before a defendant is entitled to discovery certain requirements must be met:

1. The evidence must consist of tangible objects such as books, papers, documents, etc.;

2. These objects must belong to or been obtained from the defendants or obtained from others by seizure or process;

3. The objects sought must be shown to be material to the preparation of the defense;

4. The request must be shown to be reasonable.

It seems clear that a discovery procedure must be governed by Rule 16. Rule 17 (c) is not a discovery rule but, rather, its purpose is to shorten a trial by requiring the production before trial of documents subpoenaed for use at the trial. As the Supreme Court said in Bowman Dairy Co. v. United States, 1951, 341 U.S. 214, 220, 71 S.Ct. 675, 679, 95 L.Ed. 879:

> "It was not intended by Rule 16 to give a limited right of discovery, and then by Rule 17 to give a right of discovery in the broadest terms. Rule 17 provided for the usual subpoena *ad testificandum* and *duces tecum,* which may be issued by the clerk, with the provision that the court may direct the materials designated in the subpoena *duces tecum* to be produced at a specified time and place for inspection by the defendant. Rule 17(c) was not intended to provide an additional means of discovery. Its chief innovation was to expedite the trial by providing a time and place *before* trial for the inspection of the subpoenaed materials. United States v. Maryland & Virginia Milk Producers Ass'n, [D.C.] 9 F.R.D. 509."

With these fundamental principles in mind we turn to the requests of the individual defendants.

### Defendant Hagen

■ Defendant, Cecil V. Hagen, has asked for the transcript of his testimony before the Securities and Exchange Commission relating to the investigation of Gulf Coast Leaseholds, Inc., and the transcript of testimony of all co-defendants and co-conspirators relating to said investigation which will be used at the trial as evidence against Hagen pursuant to Rule 17(c). Defendant Hagen also asks for permission to serve subpoenas duces tecum calling for "specified docu-ments". Permission of the court is not needed to serve a subpoena pursuant to Rule 17(c), nor can the court rule on whether compliance with it would be unreasonable and oppressive since it has not been served and the documents have not been specified.

■ Although the Judges in this district are split on the question, and the Court of Appeals for the Second Circuit has not passed on the question, I feel that it is the better view that statements by defendants are not documents within the scope of Rule 16. United States v. Peltz, supra. The Government has offered to make available the transcripts of each defendant's own testimony before the Securities and Exchange Commission but only if such testimony was given pursuant to a subpoena. Defendant claims that he should be entitled to his testimony regardless of whether or not he was subpoenaed and that the government is drawing a distinction without meaning. Albeit, but it is a distinction which the Congress has written into law. 5 U.S. C.A. § 1005(b). Thus, under Rule 16 defendant is not entitled to his statements given before the Securities and Exchange Commission unless pursuant to a subpoena, nor is he entitled to his co-defendants' or co-conspirators' statements even if they were given pursuant to a subpoena.

■ The question arises as to whether Hagen is entitled to pre-trial discovery of his statements under Rule 17(c). As was said above, Rule 17(c) was not intended as a means for additional discovery; however, some cases have converted it into a basis for pre-trial discovery. I believe that the Rule should be construed as providing for the traditional type of trial subpoena although it may be made returnable before the actual date of the trial. To interpret this Rule differently would strip Rule 16 of all meaning.

### Defendant Kelly

Defendant Kelly has asked for discovery and inspection, pursuant to Rules 16 and 17(c), of the following items:

(a) Minutes of his testimony before the Grand Jury;

(b) Transcript of his testimony before the Securities and Exchange Commission;

(c) All records and memoranda which the Government presented to the Grand Jury;

(d) Any document of any kind which the Government intends · to introduce in evidence at the trial;

(e) All documents obtained from Kelly;

(f) All documents seized by process from third parties or co-defendants;

(g) All papers signed by Kelly now in the Government's possession obtained from Kelly or third parties or co-defendants;

(h) All documents referred to in the indictment and which the Government intends to introduce at trial.

 As to items (a) and (c) above, the defendant is clearly not entitled to them. The request for all records and memoranda which the Government presented to the Grand Jury is a blanket request which does not specify any particular document. It is clearly a "fishing expedition" and there has been no showing that the request is reasonable or that the items sought may be material to Kelly's defense. United States v. Woodner, D.C.S.D.N.Y.1959, 24 F.R.D. 33. The secrecy of Grand Jury proceedings is an old-established policy and is not to be deviated from except for a substantial reason. United States v. Procter & Gamble Co., 1958, 356 U.S. 677, 78 S.Ct. 983, 2 L.Ed.2d 1077.

Item (b) was discussed above and the same ruling applies to all the defendants. They can have their own testimony before the Securities and Exchange Commission if they testified pursuant to a subpoena.

Items (d), (f), (g) and (h) are all denied. These are blanket requests for anything and everything the Government has. No documents are specified. There is absolutely no showing of the reasonableness of the request or that the items sought are material to the preparation of the defense. In addition, as to items (d), (g) and (h), there is no showing that the items requested were obtained from or belonged to the defendant or that they were obtained from others by seizure or process. It should be pointed out in connection with item (h) that the Government has voluntarily supplied defendants with many documents specifically referred to in the indictment and has specified which documents are not in its possession.

As to item (e), the Government has stated that it will make available for inspection by each defendant, by appointment at the United States Attorney's office, all. documents obtained from him, his spouse or his attorney.

It is to be noted that in connection with defendant Kelly's motion for discovery and inspection he has served a subpoena duces tecum, dated May 28, 1960, addressed to "Mr. S. Hazard Gillespie or one of his assistants", and a subpoena duces tecum, dated December 30, 1960, addressed to Jerome J. Londin. The Government has moved to quash these subpoenas. The Government's motion is hereby granted.

### Defendant Teller

█ Defendant, Martin Teller, has simply moved for an order granting him any and all relief granted to his co-defendants to the extent that such motions seek production and inspection of evidence from the Government, third-party witnesses or co-defendants other than Martin Teller. That is the extent of his motion and the affidavit which accompanies it. Since nothing is specified and no reason given, the motion is denied in its entirety.

### Defendant Van Allen

Defendant, John Van Allen, has requested many documents under Rule 16, which fall into three general categories:

1. Specific agreements, documents and letters referred to in so many words in the indictment;

2. Records of accounts and of sales and solicitations for sales and the like, specifically referred to in the indictment;

3. Testimonial statements of Mr. Van Allen.

In addition, Van Allen asks that if any of the above material was not seized by the United States of America, or taken by other process, then an order be entered permitting him to serve upon the United States of America a trial subpoena *duces tecum*, pursuant to Rule 17(c). As was said above, no permission or order of the court is needed to serve a subpoena pursuant to Rule 17(c).

I have already ruled as to item 3 in my previous discussion. As to items 1 and 2, the Government has furnished defendants with many of the documents specifically referred to in the indictment and has enumerated the material specifically referred to in the indictment which is not in its possession. The remaining requests of Van Allen are blanket requests. For example, he asks for "All documents showing and concerning the offer and sale, the solicitation and execution of orders to purchase and of sale, and the receipt and delivery of the common stock in Gulf Coast referred to in Paragraph 22" of the indictment. This request is substantially repeated for each paragraph and count in the indictment. There is no showing that the objects belonged to or were obtained from the defendant or obtained from others by seizure or process. There is no showing that the objects sought are material to the preparation of the defense. There is no showing as to the reasonableness of the request. Defendant's motion is denied except for the fact that he may examine all documents which the Government obtained from him, his spouse or attorney.

### Defendant Stahl

Defendant, Charles R. Stahl, asks for discovery and inspection of the following items:

(a) All documents he, his wife or lawyer gave to the United States Attorney and transcripts of statements made by defendant in the office of the United States Attorney;

(b) All documents he supplied to the Securities and Exchange Commission including the transcripts of any testimony;

(c) All documents he supplied to the Attorney General of New York to the extent that such documents are or will be in the possession of the United States Attorney including the transcripts of any statements;

(d) All documents and transcripts exhibited to the Grand Jury;

(e) All documents named, designated or identified in any of the counts of the indictment under which Stahl may be convicted;

(f) All documents not specifically named in the indictment upon which the prosecution will rely;

(g) All documents obtained from Stahl's co-defendants or from any person claimed to have aided or abetted him either by seizure, process or any other means;

(h) All documents of co-defendant De Pontet & Co. obtained from anyone by seizure or process;

(i) All documents not covered by the above upon which the prosecution will rely obtained by seizure or process.

█ As to items (a) and (c), the United States Attorney has agreed to make them available except for the transcripts which, as I ruled above, defendant is not entitled to. As to item (b), under 5 U.S.C.A. § 1005(b), Stahl is entitled to anything he gave the Securities and Exchange Commission pursuant to a subpoena. I cannot rule as to any documents turned over to the Commission volun-

tarily since I do not know what, if any, they are.

Defendant is clearly not entitled to item (d), and items (f), (g), (h) and (i) are just fishing expeditions. No documents are specified nor is there any showing of reasonableness or materiality. The requests are denied. As to item (e), the Government has already supplied it.

### Defendants Bean and Singer, Bean & Mackie, Inc.

Defendants, Jules Bean and Singer, Bean & Mackie, Inc., have asked for permission to serve a trial subpoena *duces tecum* calling for the production of some 365 items pursuant to Rule 17(c). I have already stated above my position as to Rule 17(c). They have also asked for discovery and inspection of some additional 59 items under Rule 16. The Government has furnished 10 of the 59 and has stated that 7 others are not in its possession. In addition, the Government, as mentioned previously, has stated that it will allow each defendant to inspect all documents obtained from him, his spouse or attorney. This covers the majority of the remaining 42 documents asked for by these defendants. There are, however, a number of requests which ask for letters and memoranda of transmittal of "X" number of shares of Gulf Coast Leasehold's common stock by Singer, Bean & Mackie to so-and-so, on or about such and such date, together with confirmation of purchase, memoranda of instruction and other documents relating to the purchase and sale of said securities. These requests are too broad and are denied except that the Government has agreed to provide the confirmations of such transactions.

There remain from the items that defendants requested letters and other correspondence written by these defendants and sent to various people. It is suggested that since these defendants wrote these letters they check their files to see if they retained copies. If so, then there is no need for discovery. If not, then the United States Attorney has stated that he will make them available for inspection.

### Defendants Du Val and Du Val's Consensus, Inc.

Defendants, Pierre A. Du Val and Du Val's Consensus, Inc., ask for discovery and inspection, pursuant to Rule 16, of records which Du Val turned over to the Attorney General of New York and which are now in the offices of the United States Attorney. Defendant also gave sworn testimony in the office of the Attorney General of New York and wants a copy of the transcript, pursuant to 5 U.S.C.A. § 1005(b). 5 U.S.C.A. § 1005 (b) applies only to agencies of the United States Government and not to the New York Attorney General's office. Thus, defendant is not entitled to his testimony pursuant to the above section, nor is he entitled to it under Rule 16 as I have previously ruled.

As to the records which defendant turned over to the Attorney General and which are now in the United States Attorney's office, the Government has stated that it will permit defendant to examine them.

### Bills of Particulars

Twelve of the defendants have made motions for bills of particulars pursuant to Rule 7(f) of the Federal Rules of Criminal Procedure. The indictment in this case consists of 160 counts. The first count, which covers 30 legal cap pages, is the conspiracy count. Not only does it give the details of the alleged conspiracy but it also sets forth 195 specific overt acts allegedly committed in furtherance of the conspiracy, giving the date of the acts, their nature, and the names of the defendants that allegedly participated in them. Counts 2 to 160 charge substantive offenses and these counts were incorporated into Count 1 as overt acts.

The function of a bill of particulars is to enable defendants to prepare for trial, prevent surprise, and to permit them to plead double jeopardy in the

**338**

event of subsequent prosecution for the same offense. Wong Tai v. United States, 1927, 273 U.S. 77, 47 S.Ct. 300, 71 L.Ed. 545; United States v. Klein, D.C.S.D.N.Y.1954, 124 F.Supp. 476. In this case it would serve no useful purpose to enumerate each of the items that defendants seek since, for the most part, they seek the Government's evidence or the theory of the Government's case. In general, the bills go far beyond anything to which defendants are entitled, especially in view of the unusually detailed indictment and the particulars which the Government has already supplied.

Defendant Kelly's bill is granted to the extent that the Government must state whether he was a principal or an aider and abettor in counts 2 through 18, 57 through 61, 95 through 98, 126 through 131 and 139 through 160.

Defendant Stahl's bill is granted to the extent that the Government must supply the names of all purchasers upon whom it will claim the transactions, practices, and course of business alleged in paragraph 7 of the first count operated as a fraud and a deceit.

Defendant Hagen's bill is granted to the extent that the Government must supply the names and current addresses of the persons named in paragraph 7(c) of the first count and of any other persons, not named, whom the Government will claim were defrauded. It must also supply the names and addresses of those persons from whom it will be claimed that the defendant borrowed the common stock of Gulf Coast Leaseholds, Inc., as alleged in paragraph 15 of the first count. The Government must further state whether Hagen was a principal or an aider and abettor with respect to counts 2 through 7, 9, 10, 51 through 61, 95 through 104, 106, 107, and 127 through 131, and whether Hagen acted individually or as an officer of Gulf Coast Leaseholds.

Defendant Van Allen's bill is granted as to items 1, 5, 9, 11, 13 and 16. Defendants Bean and Singer, Bean &

Mackie, Inc.'s bill is granted as to items 7(c), 7(d), 10(b), 15(c), 15(d), 15(e), 15(f), 15(h), 16(a) and 16(b). The remaining items of their bills of particulars are all denied except, of course, those to which the Government has already supplied the information.

Defendant Gulf Coast Leaseholds, Inc.'s bill is granted to the extent that the Government must state which officer, director or authorized agent of the corporation committed the various acts alleged.

The bills of defendants, Du Val, Du Val's Consensus, Inc., Hertzberg, F. W. MacDonald & Co. and Teller, are, except to the extent that the Government has consented to them, denied in their entirety.

### Motions for Severance

Seven motions for separate trials pursuant to Rule 14 of the Federal Rules of Criminal Procedure are before this court. Defendants, Van Allen, Kelly, Hagen, Gulf Coast Leaseholds, Inc., Hertzberg and F. W. MacDonald & Co., Bean and Singer, Bean & Mackie, Inc. and Stahl, all ask for separate trials and many of them asked to be tried last. Defendants, Hagen and Kelly, also ask that Count 1, the conspiracy count, be severed from the substantive counts.

The granting of separate trials is within the discretion of the trial judge and the burden is on the defendants to show they will not be able to obtain a fair trial if tried with the other defendants. Hall v. United States, D.C.Cir. 1948, 83 U.S.App.D.C. 166, 168 F.2d 161, 4 A.L.R.2d 1193, certiorari denied, 1948, 334 U.S. 853, 68 S.Ct. 1509, 92 L.Ed. 1775. Each defendant argues that the other defendants' testimony is vital to his case but that these co-defendants would probably plead the Fifth Amendment if called as witnesses. If, the argument runs, he was tried separately then, after the trial of his co-defendants, they might be willing to testify for him. It is, of course, obvious that only one of the defendants can be tried last if severance

is granted. Moreover, a Fifth Amendment plea is still available to co-defendants even after the disposition of their cases since there remains the possibility of other prosecutions under related statutes.

▬▬▬▬ Defendants also argue that the defenses will be antagonistic. This is not sufficient reason to grant separate trials especially where the charges against all the defendants result from the same series of acts and may be proved by similar evidence. United States v. Lebron, 2 Cir., 1955, 222 F.2d 531, certiorari denied, 1955, 350 U.S. 876, 76 S. Ct. 121, 100 L.Ed. 774. Nor is the contention by some of the defendants that severance should be granted because of the expense of a joint trial a sufficient one. United States v. Berman, D.C.S.D. N.Y.1959, 24 F.R.D. 26.

▬▬ Various defendants claim they will be prejudiced by co-defendants' alleged post-conspiratorial declarations and the past criminal conduct of some of the defendants. There is no doubt that a co-conspirator's admission after the termination of the conspiracy is admissible only against himself. As to the other co-conspirators, it is hearsay. The proper means of protecting the co-defendants from prejudice is a clear and careful instruction to the jury as to the limited admissibility of the post-conspiratorial statement. United States v. Bando, 2 Cir., 1957, 244 F.2d 833, certiorari denied, 1957, 355 U.S. 844, 78 S.Ct. 67, 2 L.Ed.2d 53.

It is also argued that because of the number of defendants involved the jury will be unable to keep the evidence against each defendant separate, and thus the defendants would be denied a fair trial. There is, of course, a possibility that this may happen. There is also the possibility that a post-conspiratorial statement may be so prejudicial as to require a severance. However, these questions should be left for determination at trial and not at this time. The Government has informed the court that all the defendants will not go to trial. There is also the possibility that some of the defendants may take the witness stand. It is impossible to determine at this time what precise conditions will prevail at the trial.

Not to be overlooked is the importance to the Government of having a single trial of this involved case instead of many trials covering the same subject matter. If it appears at any time during the trial that any defendant will be substantially prejudiced the trial judge can order a severance and defendants' rights can thus be fully protected.

Motions for severance are denied.

### Motions for Change of Venue

Defendants Kelly and Gulf Coast Leaseholds, Inc. move for an extension of time within which to file a motion to transfer, pursuant to Rule 21(b) of the Federal Rules of Criminal Procedure. These motions for extensions are denied and will be treated as motions to transfer. Defendant Hagen has also moved to transfer. Kelly moves to have the case tried in Washington, D. C., and Hagen and Gulf Coast Leaseholds, Inc. want it tried in Houston, Texas.

The indictment names 20 defendants, of which 9 are located in the Southern District of New York and 3 are located in the Eastern District of New York or New Jersey. Four defendants have not submitted to this court's jurisdiction, of whom two are in Canada and two are in Switzerland. One defendant is in California. Kelly is the only one in or near Washington, D. C., and Hagen and Gulf Coast Leaseholds, Inc, are the only ones in or near Texas.

▬▬▬ There are approximately 65 victim witnesses named in the substantive counts. Of these only 2 are from Texas and only one is from the District of Columbia. Sixteen are from New York and the rest are well scattered throughout the United States and Canada. It is clear that this district is the most logical and convenient one in which

to hold the trial. The indictment charges a fraudulent scheme for the sale of unregistered securities to be accomplished by means of the mails, telephone calls, false advertising and market manipulations, emanating from the Southern District of New York. Most of the defendants reside here and a large plurality of the witnesses reside here or nearby. It also appears that most of the documentary evidence is also here.

A transfer, pursuant to Rule 21(b), is within the discretion of the district court. Scott v. United States, 4 Cir., 1958, 255 F.2d 18. Venue should be laid where most of the acts necessary to the execution of the scheme occurred. Trial should be had at the place where the primary evils are alleged to have occurred. United States v. Cashin, 2 Cir., 1960, 281 F.2d 669. This is not a case where the Government has seized upon some minimal jurisdictional contact with a district in order to bring a case in a district it finds more advantageous. Most of the criminal acts charged in the indictment took place in the Southern District of New York. There is no doubt that a transfer of the case would be more convenient for the defendants, Hagen and Gulf Coast Leaseholds, Inc., or for defendant Kelly. However, this falls far short of a showing that the interests of justice require such a transfer. Accordingly, the motions to transfer are denied.

### Stahl's Motion to Dismiss the Indictment and to Suppress and Return Evidence

Defendant Stahl has moved to dismiss the indictment against him and to suppress evidence on the grounds that he was misled into giving testimony. It is Stahl's contention that the Grand Jury proceedings were tainted with unconstitutionally unfair conduct and that he was coerced into providing the prosecution with evidence against himself.

On February 2, 1961 a hearing was held on this motion. The facts appear to be that the Assistant United States Attorney in charge of the case called up Stahl's attorney and asked if Stahl would mind coming down to the United States Attorney's office to answer some questions. Stahl came and willingly answered the questions put to him. He also, at the request of the Assistant United States Attorney, brought numerous documents which he turned over and which he claims were never returned to him.

Stahl's claim that he was coerced into providing evidence against himself is without merit. To the contrary, it appears that Stahl wanted to explain his actions and to give evidence. Stahl's own lawyer testified that Stahl said "I will testify, but I want to make sure that I will have the right to examine the testimony and make any corrections or modifications that are necessary before I sign it", and that this was the only condition which Stahl laid down to his testifying. There is no evidence that Stahl was coerced or tricked into giving evidence. Rather, it appears from all the evidence that Stahl was anxious to give evidence and to cooperate with the Government. Grant v. United States, 2 Cir., 1961, 291 F.2d 227.

Stahl also contends that the Grand Jury proceedings at which he testified were tainted with unconstitutionally unfair conduct. I find no evidence to support this charge. I have examined the Grand Jury minutes and find that before the proceedings began Stahl was advised that he did not have to make any statement and that he had the right to be represented by counsel. It is Stahl's contention, however, that he had been told by the Assistant United States Attorney that he was not a defendant and this induced him to testify. This is denied and the Government asserts that it realized Stahl was deeply involved the day before he [Stahl] testified before the Grand Jury. Stahl claims that his rights were violated when he was brought before a Grand Jury to testify when the prosecuting attorney knew he was a potential defendant.

In United States v. Scully, 2 Cir., 1955, 225 F.2d 113, certiorari denied 1955, 350 U.S. 897, 76 S.Ct. 156, 100 L.Ed. 788, Judge Medina discussed the problem of bringing a potential defendant before a Grand Jury and not advising him of his constitutional rights. Stahl relies on the statement, 225 F.2d at page 116 of the opinion, that

"Indeed, one would suppose that, as a matter of ethics or fair play or policy, a prosecutor would in all cases refrain from calling as a witness before a Grand Jury any person who is de jure or de facto an accused."

However, that case involved a situation where a possible defendant was summoned before a Grand Jury and *not* advised of his constitutional right against self-incrimination. The court there held that the mere possibility that the witness may later be indicted does not require that he be advised of his Fifth Amendment rights when giving testimony before a Grand Jury. In the present case Stahl, who appeared voluntarily, was specifically told of his constitutional rights.

In United States v. Monia, 1943, 317 U.S. 424, 63 S.Ct. 409, 87 L.Ed. 376, the Supreme Court ruled that a witness who testifies before a Grand Jury investigating alleged violations of the Sherman Act, in obedience to a subpoena, obtains immunity from prosecution for that offense although he does not claim his privilege against self-incrimination. However, in that case the court clearly limited its ruling to the Sherman Act and indicated that its decision would have been different if the 1934 Securities and Exchange Act was involved. Moreover, in the Monia case, the witness did not appear voluntarily but was subpoenaed.

I find nothing unconstitutional in bringing a potential defendant before a Grand Jury if he is advised of his rights.

Defendant Stahl also moves for an order directing the United States Attorney to return to said defendant "all books, papers, documents or tangible objects (hereinafter called 'documents') which during the period between December 29, 1959 and March 28, 1960 were placed by Charles R. Stahl in the hands of any member of the staff of the said United States Attorney or any representative of any agency of the Government who during said period was working with any such member on the preparation of this case."

The facts appear to be that Stahl turned over to the United States Attorney a great many documents without keeping any records whatsoever. A partial record of what was turned over was furnished by the Government, but it appears that many documents were not covered by this record. Stahl now asks that all these documents be returned. The Government agrees and has stated that it has turned over all that it received from the defendant but if defendant will provide a list of the missing documents the Government will recheck its files. Stahl claims that there are still documents which have not been returned but cannot specify which ones they are. Defendant takes the position that the burden should be on the Government. I disagree. There is no reason why the Government should be put to the burden of returning unspecified documents which it may never have received. This is especially true in view of the Government's statement that it has returned all that it received.

Defendant's motion is granted to the extent that he can specify which documents he or his attorney turned over to the Government.

Defendant's motion to dismiss and suppress is denied.

### Hagen's Motion to Dismiss

Defendant Hagen has moved to dismiss the substantive counts of the indictment because they are multiplications within the meaning of United States v. Universal C. I. T. Credit Corp., 1952, 344 U.S. 218, 73 S.Ct. 227, 97 L.Ed. 260; United States v. Personal Finance Co., D.C.S.D. N.Y.1959. 174 F.Supp. 871; United

States v. Woody Fashions, Inc., D.C.S.D. N.Y.1961, 190 F.Supp. 709.

Defendant Hagen is charged in the conspiracy count and in 30 substantive counts. Eight of the substantive counts charge a violation of 15 U.S.C.A. § 77e (c) by offering to sell unregistered securities by mail. Five counts charge a violation of 15 U.S.C.A. § 77e(a) (2) by causing an unregistered security to be carried through the mails for delivery after sale. Twelve counts charge a violation of 15 U.S.C.A. § 77q by using the mails to defraud in the offer and sale of securities. The remaining five substantive counts charge a violation of 18 U.S. C. § 1341 by using the mails to defraud in the offer and sale of securities. The conspiracy count charges that Hagen and others conspired, in violation of 18 U. S.C. § 371, to violate the above statutes and to defraud the Securities and Exchange Commission.

■■ It is Hagen's contention that each and every substantive count is a multiplication of the single scheme charged in Count 1 (the conspiracy count) and that all the substantive counts should be dismissed. None of the three cases cited above, on which the defendant relies, involved the joinder of a conspiracy count with substantive counts. It is settled law that a substantive offense and a conspiracy offense are separate and distinct even though both stem from the same facts. Callanan v. United States, 1961, 364 U.S. 587, 81 S.Ct. 321, 5 L.Ed.2d 312. "It has been long and consistently recognized by the Court that the commission of the substantive offense and a conspiracy to commit it are separate and distinct offenses." Pinkerton v. United States, 1946, 328 U.S. 640, 643, 66 S.Ct. 1180, 1182, 90 L.Ed. 1489.

■■ Hagen further contends that the transactions alleged as violative of 15 U.S.C.A. § 77e(c) are substantially realleged as violative of 15 U.S.C.A. § 77q and that this is an improper duplication. Similarly, he contends that there is an improper duplication in that the trans-

actions alleged as violative of 15 U.S.C.A. § 77e(a) (2) are realleged as violative of 18 U.S.C. § 1341.

15 U.S.C.A. § 77e(c) is directed at use of the mails to offer to sell or offer to buy any security unless a registration statement is in effect as to such security. 15 U.S.C.A. § 77q is directed at use of the mails in furtherance of a scheme to defraud in the sale of any securities. Thus, the gist of § 77e(c) is the non-registration of the security while § 77q is aimed at the existence of a fraudulent scheme in connection with such securities and registration or non-registration is immaterial. 18 U.S.C. § 1341 deals with any fraudulent scheme and is not limited to the securities field, and 15 U.S.C.A. § 77e(a) is aimed at preventing the carrying through the mails of any unregistered security for purposes of sale or for delivery after sale. Each of these four statutory provisions deal with different elements and the joinder in one indictment of counts charging violations of each of the sections is permissible. The same transaction may violate two distinct provisions of the same statute or different statutes and be punishable under both as separate substantive crimes. Gore v. United States, 1958, 357 U.S. 386, 78 S.Ct. 1280, 2 L.Ed.2d 1405.

■■■ The test to determine whether one or two offenses were committed was stated by the Supreme Court in Blockburger v. United States, 1932, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306. There the court held that Section 1 of the Narcotics Act, forbidding the sale of drugs except in or from the original stamped package, and Section 2, forbidding the sale not in pursuance to a written order, created two distinct offenses, and both are committed by a single sale. The Court states, at page 304 of 284 U.S., at page 182 of 52 S.Ct., that—

"Each of the offenses created requires proof of a different element. The applicable rule is that, where the same act or transaction constitutes

a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one is whether each provision requires proof of a fact which the other does not. Gavieres v. United States, 220 U.S. 338, 342 [31 S.Ct. 421, 55 L.Ed. 489], and authorities cited."

Each of the four statutory provisions involved in the present case requires proof which the others do not. There is no conflict in charging that a single act violates both the general mail fraud statute and the securities mail fraud provision. Edwards v. United States, 1941, 312 U.S. 473, 61 S.Ct. 669, 85 L.Ed. 957.

 Hagen's final contention is that the Government has indicted him for a course of conduct but has divided this conduct up into its component parts. Thus, Hagen contends that when the Government charges him with offering to sell unregistered securities by mail in violation of 15 U.S.C.A. § 77e(c) it is charging him with a course of conduct and that each mailing of the offer to sell to a different person is not a separate offense. In the indictment Count 2 is essentially repeated in counts 3, 4, 5, 6, 7, 9 and 10 with the only major difference being the people to whom the offer to sell was sent. Similarly, the sending of an unregistered security through the mails in violation of 15 U.S.C.A. § 77e(a) (2), alleged in Count 57, is repeated in counts 58, 59, 60 and 61 with the major differences being the amount of Gulf Coast Leaseholds, Inc. stock and the date of mailing. The offense charged in Count 95 (violation of 15 U.S.C.A. § 77q) is repeated in counts 96 to 104 and 106 and 107 with the essential difference being the people to whom the matter was sent, and the offense charged in Count 127 (violation of 18 U.S.C. § 1341) is repeated in counts 129 to 131 with the only major difference being the amount of stock and the date of mailing.

This argument was upheld by the Supreme Court in United States v. Universal CIT Credit Corp., supra, and more recently by this court in United States v. Personal Finance Co., supra, and United States v. Woody Fashions, Inc., supra. However, none of those cases involved the statutes before the court in this case. The CIT Credit case involved the Fair Labor Standards Act. When the bill out of which the Fair Labor Standards Act evolved was first introduced into Congress it explicitly defined what constituted a separate offense and set the maximum fine at $500 for each offense. The unit of criminal offense was the employee as to §§ 6 and 7 of that Act, and as to § 11, each week of violation was a separate offense. The Act, as finally passed, eliminated the separate offense clause and substituted $10,000 for $500 as the maximum fine. Neither of the two statutes involved in the instant case have a similar legislative history.

It is difficult to ascribe a specific intent to Congress on this issue because it does not seem to have been discussed in the debates on the statutes involved in the present case. However, it has repeatedly been held that each mailing, in violation of 18 U.S.C. § 1341, is a separate offense. In re Henry, 1887, 123 U.S. 372, 8 S.Ct. 142, 31 L.Ed. 174; Badders v. United States, 1916, 240 U.S. 391, 36 S. Ct. 367, 60 L.Ed. 706. Similarly, 15 U. S.C.A. § 77q has been interpreted the same way. In Palmer v. United States, 10 Cir., 1955, 229 F.2d 861, certiorari denied 1956, 350 U.S. 996, 76 S.Ct. 546, 100 L.Ed. 861, Palmer was convicted on two counts for violation of 18 U.S.C. § 1341 and on three counts for violation of 15 U.S.C.A. § 77q(a) (1). The Circuit Court affirmed the conviction, stating—

"Palmer finally contends that Counts 2, 3, 4 and 5 are invalid as imposing unauthorized multiple penalties. It is well settled that each separate use of the mails in the execution of a scheme to defraud constitutes a separate offense. Badders v. United States, 240 U.S. 391, 36 S. Ct. 367, 60 L.Ed. 706; Mitchell v.

United States, 10 Cir., 142 F.2d 480. The same rule applies to the use of the mails in a scheme to defraud in the sale of securities. Palmer cites and relies on the recent case of Bell v. United States, 349 U.S. 81, 75 S. Ct. 620, 99 L.Ed. 905. It was there held that the simultaneous transportation of more than one woman in violation of the Mann Act, 18 U.S. C.A. § 2421, constituted only one offense and not a separate offense for each woman transported. The court's construction of the Mann Act in the Bell case obviously may not be regarded as a departure from the rule laid down in the Badders case in which the court dealt with the mail fraud statute." [229 F.2d 867]

As to 15 U.S.C.A. § 77e, the issue does not seem to have been previously ruled on by the courts. However, this section is based on the use of the mails and it would seem that Congress would intend the same consequences for violation of this section as for violation of the mail fraud provision of the 1933 Securities Act (15 U.S.C.A. § 77q) and the general mail fraud statute (18 U.S.C. § 1341).

Defendant Hagen also moves to dismiss on the grounds that—

(1) The indictment fails to charge any offense against the laws of the United States;

(2) The indictment is barred by the statute of limitations;

(3) The indictment violates Rule 7(c) of the Federal Rules of Criminal Procedure in that it does not contain plain, concise and definite statements of essential facts constituting any offense against the United States;

(4) The indictment does not negative any of the exceptions contained in the Securities Act of 1933;

(5) The indictment violates defendant's rights under Articles V and VI of the United States Constitution;

(6) The grand jurors were not publicly drawn from a box; and

(7) That the First Count of the indictment is duplicitous.

 I have examined all of these grounds and find them devoid of any merit. The statute of limitations is 5 years (18 U.S.C. § 3282) and the indictment was filed within that time. Hagen's contention that the indictment fails to negative the statutory exemptions has no basis. It has long been held that the indictment need not allege that the defendant does not come within the exempted clause. McKelvey v. United States, 1922, 260 U.S. 353, 357, 43 S.Ct. 132, 67 L.Ed. 301; Edwards v. United States, 1941, 312 U.S. 473, 483, 61 S.Ct. 669, 85 L.Ed. 957. Hagen's motion to dismiss, evidently because the grand jurors were picked out of an octagonal metal box capable of being rotated on its axis and not out of a stationary box, is also denied. Nor is the First Count of the indictment duplicitous. The indictment charges only one conspiracy with many objects. United States v. Stromberg, D.C.S.D.N.Y.1957, 22 F.R.D. 513, 519. This does not make the First Count duplicitous since the single conspiracy is the crime. Braverman v. United States, 1942, 317 U.S. 49, 54, 63 S.Ct. 99, 87 L. Ed. 23. As to the charge that the indictment fails to allege any crime, the courts have consistently held that an indictment is sufficient where it is pleaded in the language of the statute and informs the defendant of the nature of the charges. United States v. Ansani, 7 Cir., 1957, 240 F.2d 216, 223, certiorari denied 1957, 353 U.S. 936, 77 S.Ct. 813, 1 L.Ed.2d 759; United States v. Smith, 3 Cir., 1956, 232 F.2d 570.

Defendant's motions to dismiss are denied in their entirety.

### Kelly's Motion to Dismiss

Defendant Kelly has moved to dismiss the indictment, to quash the indictment and to suppress his testimony given before the Grand Jury. Actually, Kelly has

filed two motions to dismiss. One is based on the fact that, in the selection of grand jurors, an octagonal metal box capable of being rotated on its axis was used and not a stationary box. As I ruled above, I find no merit in this contention and this motion to dismiss is denied.

Kelly's other motion to dismiss is based upon the fact that the Government indicted defendants Hagenbach and Brandel Trust. Kelly argues that the testimony of these defendants is indispensable to his case and because they were indicted he cannot receive a fair and impartial trial. Kelly states that the act of the Government in indicting these non-resident defendants has put him "in a position where it is extremely doubtful that he will even be able to interview said officials, let alone secure their presence at the time of trial." If defendant's motion were granted, it would mean that every time a non-resident was indicted and became a fugitive a defendant could claim that such non-resident defendant would have come forward to exculpate him if he hadn't been indicted and thus the indictment should be dismissed. Defendant cites no authority for such a proposition, and his motion to dismiss is denied.

Kelly's motions to suppress and to quash the indictment are based on the composition of the Grand Jury and alleged misconduct of a former prosecutor. In connection with these motions, Kelly has requested a hearing. In view of all the charges alleged I feel that a hearing is necessary before a proper ruling can be made on these motions. In a companion motion, Kelly has sought leave of this court to issue a subpoena duces tecum on each member of the Grand Jury. Under the Federal Rules of Criminal Procedure subpoenas are issued to counsel in blank and counsel then issues the subpoenas. Leave of court is not required and Cammer v. United States, 1956, 350 U.S. 399, 76 S.Ct. 456, 100 L. Ed. 474 does not change the existing rule.

The hearing on Kelly's motions to suppress and to quash will be held on Wednesday, September 6, 1961, at 10:30 A.M. in Room 506, United States Courthouse, Foley Square, New York, N. Y.

### Hertzberg's, F. W. MacDonald & Co.'s and Gulf Coast Leaseholds, Inc.'s Motions to Dismiss

Defendants Hertzberg and F. W. MacDonald & Co. move to dismiss the indictment on the grounds that it fails to allege any crime, alleges more than one crime and is barred by the statute of limitations. I have already ruled above that there is no merit in any of these contentions.

Defendant Gulf Coast Leaseholds, Inc. moves to dismiss on the grounds that the indictment is barred by the statute of limitations (ruled on above) and that it fails to allege that any officer, director or any duly authorized agent of the corporation authorized the specific acts alleged in the indictment. Where an indictment charges a corporation with an offense, it need not indicate for whose acts the corporation is being charged, nor need the indictment allege that such acts were duly authorized. United States v. Detroit Sheet Metal & Roofing Contractors Ass'n, D.C.E.D. Mich.1953, 116 F.Supp. 81, 91.

Defendants' motions to dismiss are denied.

### Motions to Strike

Defendants Stahl and Van Allen both move to strike certain words from the indictment. Stahl asks that the words "persons to be defrauded" be stricken. This is denied. Wolpa v. United States, 8 Cir., 1936, 86 F.2d 35; Berry v. United States, 5 Cir., 1926, 15 F.2d 634. Van Allen has 14 separate requests to strike, of which the Government consents to those numbered 3 to 9 and 11 to 13. Requests 1, 2, 10 and 14 are denied. (See Wolpa, supra, and Berry, supra.).

### Motions to Take Depositions

Defendant Kelly moves to take the depositions of co-defendants Hagenbach

and Miles, and defendants Kelly and Hagen move for additional time in which to make further motions to take depositions. The motions for additional time are granted to the extent that defendants have 60 days from the date on which the Government complies with the particulars granted by this court.

As to the motions to take the depositions of Paul Hagenbach and Adam Miles, they are denied. The only reason that these defendants are "unable to attend or prevented from attending" the trial is that they are fugitives. Bench warrants are outstanding for their arrests as defendants in this case. To permit them to testify through means of depositions and still remain fugitives would be an injustice and would not "prevent a failure of justice." Rule 15 of the Federal Rules of Criminal Procedure.

It is so ordered.