**UNITED STATES of America**

v.

**David Icchok SHACKNEY, a/k/a David Isaac Shackney, David I. Shackney.**

**Cr. No. 10698.**

United States District Court
D. Connecticut.
Nov. 21, 1962.

Robert C. Zampano, U. S. Atty., New Haven, Conn., James D. O'Connor, Asst. U. S. Atty., Hartford, Conn., for plaintiff.

Jacobs, Jacobs, Jacobs & Jacobs, by Ira B. Grudberg, New Haven, Conn., for defendant.

BLUMENFELD, District Judge.

By resort to a motion grounded upon Rule 16, and a subpoena duces tecum to the United States Attorney under Rule 17(c), Federal Rules of Criminal Procedure, the defendant seeks to have the government produce certain letters which are admittedly in its possession in advance of the trial so that the defendant may inspect and copy them.

The defendant Shackney was indicted on July 17, 1962 under nine counts charging him with violation of § 1581(a) and § 1584 of Title 18 of the United States Code. The United States alleges that beginning on or about July 12, 1961 and continuing until on or about March 3, 1962, the defendant held certain members of the Oros family to a condition of peonage and involuntary servitude. Defendant here seeks the production for inspection, copying and translation of numerous letters written by members of said Oros family in Spanish from July of 1961 to July 18, 1962 to relatives and friends in Mexico.

When, during the hearing upon the motion, the government pointed out that the letters do not belong to the defendant and asserted that they had not been obtained by seizure or process, the defendant abandoned his pursuit of the letters under Rule 16, and properly so. Bowman Dairy Co. v. United States, 341 U.S. 214, 219, 71 S.Ct. 675, 95 L.Ed. 879 (1951). Insofar as the motion is brought under Rule 16, F.R.C.P., it is denied.

The remaining question is whether the United States Attorney should be required to honor the subpoena duces tecum under Rule 17(c) in the face of the objections raised in the government's motion to quash.

Although the scope of pre-trial discovery in criminal cases is limited, it is available under Rule 16 to permit a defendant to inspect items which "may be material to the preparation of his defense," a classification embracing considerably more than items "to be offered in evidence" which are reachable by a subpoena duces tecum under Rule 17(c). But whether discovered under Rule 16 or not

> "* * * if such materials or any part of them are not put in evidence by the Government, the defendant may subpoena them under Rule 17(c) and use them himself. It would be strange indeed if the defendant discovered some evidence by the use of Rule 16 which the Government was not going to introduce and yet could not require its production by Rule 17(c). There may be documents and other materials in the possession of the Government not subject to Rule 16. No good reason appears to us why they may not be reached by subpoena under Rule 17(c) as long as they are evidentiary. That is not to say that the materials thus subpoenaed must actually be used in evidence. It is only required that a good-faith effort be made to obtain evidence. The court may control the use of Rule 17(c) to that end by its power to rule on motions to quash or modify." (pp. 219, 220, 71 S.Ct. p. 678.)

Under no interpretation does Rule 17(c) require denial to the defendant of access to evidence favorable to him held by the government. The place of Rule 17(c) in the procedural scheme governing criminal trials has been marked out. "Its chief innovation was to expedite the trial by providing a time and place *before* trial for the inspection of the subpoenaed materials. United States v. Maryland & Virginia Milk Producers

Assn., D.C., 9 F.R.D. 509."[1] Bowman Dairy Co. v. United States (supra), p. 220. It is a traditional type of trial subpoena duces tecum made returnable prior to the actual date of the trial. See United States v. Murray, 297 F.2d 812 (2 Cir., 1962); United States v. Van Allen, 28 F.R.D. 329, 334 (S.D.N.Y.1961).

By a bill of particulars filed in this case, the government charges that the members of the Oros family, whose letters are sought, were held by threats. It is obvious that at the trial an inquiry will be made into the fears of the letter writers. The significant conduct of those allegedly held to a condition of involuntary servitude encompasses not only what they did, but what they said. Although these letters may not contain positive declaration of thoughts and feelings, it is not unlikely that they will contain statements which, indirectly, impliedly or inferentially indicate the existence of the writer's mental or emotional state. Whether the letters would be admissible on the government's case in chief is not before me for decision now. The government has indicated that it does not intend to offer them in evidence. Apart from what the letters may contain in the way of direct evidence favorable to the defendant, he also claims that the letters have evidentiary value to impeach the testimony of the Oroses, who are the accusatory witnesses. The letters sought here and the potentiality for their use as evidence is clearly distinguishable from the situation in United States v. Murray (supra), where the use of 17(c) to obtain defendant's own statements was denied.

 Both parties have indicated that there are a considerable number of letters. It is not disputed that the Oroses are Mexicans, whose testimony must be given through interpreters. The letters

are in Spanish, and it is suggested that they may be written in idiomatic or colloquial Spanish, which may be subject to varying interpretations. The defendant proposes to use as its translater a faculty member of Yale University. Whether the defendant will use the letters to impeach the Oroses or to bolster his own case, it is obvious that the production of the letters before trial for inspection or translation by the defendant through his expert will avoid the frequent and lengthy delays which would otherwise be necessary. Such unreasonable delays should be avoided. The case is scheduled for trial in the next month. The requirement in Bowman Dairy Co. v. United States (supra), 341 U.S. pp. 219, 220, 71 S.Ct. p. 678, that a "good-faith effort be made to obtain evidence" before permitting the use of Rule 17(c) in order to prevent its attempted misuse as a discovery device beyond what is permissible under Rule 16 is amply fulfilled in this case. United States v. Iozia, 13 F.R.D. 335 (S.D.N.Y.1952), followed in United States v. Shindler, 24 F.R.D. 142 (S.D.N.Y.1959). The government's objections that compliance with the subpoena would be unreasonable and oppressive and that the subpoena is prematurely issued are overruled.

Since the documents sought are evidentiary and the court is satisfied that the subpoena is grounded on a good-faith effort to secure evidence, and it appears that the defendant's efforts to prepare his defense might be hampered if they are not produced in advance of trial,

IT IS ORDERED That the letters designated in the subpoena shall be produced for inspection and copying by the defendant within one (1) week at a specific time and place to be agreed upon between counsel for the parties.

---

1. United States v. Maryland & Virginia Milk Producers Assn., 9 F.R.D. 509 (D.C. 1949), opinion by Holtzoff, J., one of the framers of the Rules of Criminal Procedure.