**UNITED STATES of America,
Appellee.**

v.

**Wilson W. BROWN, Appellant.**

**No. 349, Docket 24386.**

United States Court of Appeals
Second Circuit.

Argued June 12, 1957.

Decided July 29, 1957.

Paul W. Williams, U. S. Atty., New York City, for appellee (Robert Kirtland, Asst. U. S. Atty., New York City, of counsel).

Laurence Rosenthal, New York City, for appellant.

Before CLARK, Chief Judge, and CHASE and HINCKS, Circuit Judges.

CHASE, Circuit Judge.

The appellant was tried by jury in the District Court for the Southern District of New York on an indictment in four counts, each of which charged the violation of Section 2314 of Title 18 U.S.C., by causing, with intent to defraud, the transportation of falsely made securities in foreign and interstate commerce from Mexico City, Mexico, to Central Hanover Bank & Trust Company in the City of New York which the appellant knew had been falsely made. Each count set out as the securities so transported a separate draft with supporting documents drawn by the appellant on the Hanover Bank, under a letter of credit, to obtain partial payment for what was represented to have been a quantity of Mexican manganese ore shipped aboard a railroad car, or cars, pursuant to the terms of a con-

tract. This appeal is from his conviction and sentence on three of the counts.

He relies principally upon the contention that the undisputed evidence of the government was insufficient to prove him guilty of the crime charged and as, we agree, we will not reach other grounds which have been urged for reversal.

It was shown at the trial that the appellant sold four thousand tons of Mexican manganese ore to the Union Carbide and Carbon Corporation, doing business in the City of New York, for which he was to be paid the agreed price on his sight drafts drawn under a letter of credit the buyer caused the Hanover bank to open in the appellant's favor through the Banco Nacional de Mexico at Mexico City. Under this letter of credit, as amended, the appellant could draw sight drafts on the buyer which were to be paid to him at the Mexican bank when accompanied by (1) the original bill of lading plus a non-negotiable copy of it covering shipment, on United States railroad cars, of manganese ore from Mexico to the buyer's designee in Brownsville, Texas; (2) the original invoice by the appellant to the buyer in New York; (3) a certificate of insurance on the shipment; and (4) an assayer's certificate showing the manganese content of the ore.

In each of the instances covered by the counts on which he was convicted the appellant drew a sight draft which was paid by the Mexican bank when it was presented. In each instance the draft was accompanied by bills of lading and assayer's certificates which were forged and by insurance certificates purporting to cover shipments of ore which was not in fact shipped, though they were genuine certificates issued by an insurance company. After the drafts were paid by the Mexican bank they were sent with the accompanying documents to the Hanover Bank in New York. It is the group of documents in each instance, which the government called a "package," which are the "securities" which the appellant was convicted of having caused to be transported in interstate commerce in violation of the above statute.

The now applicable part of the statute makes unlawful the transportation in interstate or foreign commerce of "any falsely made, forged, altered, or counterfeited securities, knowing the same to have been falsely made, forged, altered, or counterfeited, * * *." The phrase "falsely made" as used in the statute relates to the execution of what is defined in Section 2311 of the same title to be a security rather than to whether its content be true or false. Marteney v. United States, 10 Cir., 216 F.2d 760; Wright v. United States, 9 Cir., 172 F.2d 310. As was said in Pines v. United States, 8 Cir., 123 F.2d 825, 828, "To 'falsely make' is a crime not of changing or forming an instrument to resemble an existing genuine instrument or to represent that it is the act of a genuine and existing obligor, but rather to make an instrument which has no original as such and no genuine maker whose work is copied, although in form it may resemble a type of recognized security." Manifestly, none of the drafts, taken by themselves, were falsely made within the meaning of the statute since they were just what they did on their face appear to be, genuine drafts executed by the actual drawer, the appellant. Nor were the insurance certificates issued by an insurance company falsely made for they were genuine certificates of the company, though the shipments of ore they purported to cover were, indeed, non-existent and of course they were misleading and fraudulent for that reason but, since they were not falsely made, no question as to whether they were themselves "securities" within the meaning of the statute need be answered.

Though the original bills of lading were securities, which, as defined in Section 2311 of Title 18 U.S.C., were within the scope of Section 2314, they were issued by the Mexican National Railways, which is a governmental corporation and it is conceded by the government that

they were a class of securities which were excluded by definition from the coverage of Section 2314, as indeed they were. Nor were the non-negotiable copies of those securities which were sent to New York, to which the government refers as "way-bills," securities within the statutory definition, both because they were merely copies of excluded documents and because they were not negotiable, the statutory definition limiting the coverage in respect to bills of lading to those which are negotiable. Finally, the assayer's certificate was neither by itself a security within the statutory definition nor does the government claim it to be.

The theory on which the case was submitted to the jury and on which the government now seeks to have the judgment upheld is that, as the drafts were payable only when they were accompanied by the supporting documents in compliance with the terms of the letter of credit, the forged assayer's certificates and the copies of the forged bills of lading which were sent from Mexico City to New York with the drafts were so related to them that the drafts were falsely made within the meaning of the statute.

We cannot agree. It is true, as the government points out, that these drafts were not payable except when the conditions upon payment contained in the letter of credit were fulfilled. Old Colony Trust Co. v. Lawyers Title & Trust Co., 2 Cir., 297 F. 152, 155, certiorari denied 265 U.S. 585, 44 S.Ct. 459, 68 L.Ed. 1192; International Banking Corp. v. Irving Nat. Bank, 2 Cir., 283 F. 103; Continental Nat. Bank v. National City Bank, 9 Cir., 69 F.2d 312, certiorari denied 293 U.S. 557, 55 S.Ct. 69, 79 L.Ed. 659. But it does not follow that, because under contract law a draft may be dishonored without liability when presented for payment, unless specified documents are attached, the documents which are essential to make the draft collectible according to the terms of a letter of credit under which it is drawn are incorporated into it by reference and become a part of the draft itself. Though they serve to fulfill a condition precedent to the enforcement of payment, they add nothing needed to make the draft complete by itself as a security within the statutory definition. This serves to distinguish United States v. Osgood, 27 Fed.Cas. page 362, No. 15,971a, on which the government much relies. The affidavit which was held in that case to have been falsely made because the jurat was false was not an affidavit without a jurat and since a part essential to make the document what it purported to be was false, the document itself was held to have been falsely made. The situation in respect to these drafts is quite different and analogous to that in Prussian v. United States, 282 U.S. 675, 51 S.Ct. 223, 75 L.Ed. 610, where it was held that a forged endorsement on a government draft did not, although an endorsement was a necessary condition precedent to obtaining the payment of the draft, amount to a forgery of the draft. Gesell v. United States, 8 Cir., 1 F.2d 283, is to the same effect. See also, De Lemos v. United States, 5 Cir., 91 F. 497.

The appellant was shown to have obtained payment on the drafts fraudulently by using false, and falsely made, documents and apparently the United States mails were used in sending the fraudulent "packages," as the government calls them, to New York. Very likely what he did was punishable under our laws relating to the use of the mails to defraud and that what he did in Mexico was in violation of Mexican law but nothing in this record gives adequate support for his conviction on this indictment.

Judgment reversed and indictment dismissed.