UNITED STATES of America, Plaintiff,

v.

FIRST NATIONAL CITY BANK OF NEW YORK, Defendant.

United States District Court
S. D. New York.

Nov. 5, 1964.

Robert M. Morgenthau, U. S. Atty., for Southern District of New York, Ar-

thur M. Handler, Stephen Charnas, New York City, of counsel, for plaintiff.

Shearman & Sterling, New York City, John E. Hoffman, Jr., New York City, of counsel, for defendant.

BONSAL, District Judge.

Plaintiff, the United States of America (government) and defendant, First National City Bank of New York (bank) both move for summary judgment in this action commenced by the government under 28 U.S.C. § 1345, pursuant to Title I of the National Housing Act, 12 U.S.C. §§ 1702–1703 and regulations promulgated thereunder, 24 C.F.R. § 200.1 et seq. (1962).

The facts have been stipulated in the Pre-trial Order and additional facts are contained in the Rule 9(g) statements filed by the parties. Briefly summarized, they are that on December 4, 1953 Eliza Findley as borrower and Victoria North as co-maker executed a promissory note to the bank. The bank made a Property Improvement Loan of $2,000 under the National Housing Act. The loan was insured by the Federal Housing Administration (FHA). In making the loan, the bank relied on (1) a Credit Application signed by the borrower and the co-maker, and a Credit Statement signed by the co-maker, both dated December 2, 1953; (2) a certified copy of the deed to the real property, showing record title in the names of Eliza Findley and Victoria North; and (3) a credit investigation which consisted of the bank's telephoning the employers on the Credit Application which revealed that the co-maker, Victoria North, had been employed as a saleswoman for a realty company for two years and that there were no attachments on her salary. In 1954 the borrower defaulted on the note and the bank obtained judgments against both Eliza Findley and Victoria North, the amount now due after payments on account being $1,028.56.

In 1956 it came to the bank's attention that the co-maker "Victoria North" was also known as "Gwen Morgan" and "Mary Elizabeth Morgan" and that she

had received other loans under these names. The bank passed this information on to FHA in a letter dated December 6, 1956. In 1958, two years after this information had been passed on to FHA, the bank filed a Claim for Loss under its insurance contract and assigned to FHA the above-mentioned judgments. FHA, in March 1959, paid the bank the full amount of the loss, namely $1,028.56. In December 1959 FHA demanded reimbursement from the bank, claiming that the loan was "not eligible for insurance". When the bank refused reimbursement, the government commenced this action.

In May 1958, some ten months before FHA paid the bank, a Criminal Information was filed in the Eastern District of New York against Mary Gwendolyn Rosita Morgan charging her with an offense against the United States (18 U.S.C. § 371) with respect to the Credit Application and Credit Statement signed by her in connection with the loan. The overt acts set forth in the Information are:

1) On or about the 2nd day of December, 1953 within the Eastern District of New York, defendant MARY GWENDOLYN ROSITA MORGAN, using the name "Victoria North", signed an FHA Title I Credit Application addressed to the National City Bank of New York, New York, N. Y.

2) On or about the 2nd day of December, 1953 within the Eastern District of New York, defendant MARY GWENDOLYN ROSITA MORGAN, using the name "Victoria North", signed a Credit Statement of Co-maker addressed to the National City Bank of New York, New York, N. Y.

On May 23, 1958, Mary Gwendolyn Rosita Morgan pleaded guilty

"of the offense of violating Title 18 U.S.C. Section 371, in that on or about December 2, 1953, within the Eastern District of New York: she, with another (not charged herein) did conspire to commit an offense against the United States, to wit: to falsefy [sic] records by concealment to obtain a loan, which would be offered to or accepted by the Federal Housing Administration for insurance, which said document was designed to conceal & cover up by trick and device a fixed obligation."

The issues stipulated in the pre-trial order were:

(a) Whether the signature of "Victoria North" on the promissory note dated 12/4/53 was "genuine" within the meaning of regulations promulgated under the National Housing Act.

(b) If said signature was not "genuine," whether the note was therefore disqualified for insurance under the National Housing Act.

The pertinent regulation under the National Housing Act is Section 201.2 (24 C.F.R. § 201.2 (1962)) which provides:

"*Eligible Notes.* (a) *Validity.* The note shall bear the genuine signature of the borrower as maker, shall be valid and enforceable against the borrower * * *, and shall be complete and regular on its face. The signatures of all parties to the note must be *genuine.*" (Emphasis supplied.)

■ The meaning of "genuine" as used in the regulation has apparently not been previously interpreted by the courts, since the parties have cited no authority and the Court has found none. Its interpretation is governed by federal law. See Clearfield Trust Co. v. United States, 318 U.S. 363, 63 S.Ct. 573, 87 L.Ed. 838 (1943). Since there does not appear to be a conflict between federal and state law, the Court may consider New York law as well.

"Genuine" has been defined as that which is "free of forgery or counterfeiting". Uniform Commercial Code, § 1–201(18). Black's Law Dictionary (4th ed. 1951) states, "As applied to notes, bonds, and other written instruments, this term [genuine] means that they are truly what they purport to be, and that

they are not false, forged, fictitious, simulated, spurious, or counterfeit." Webster's New World Dictionary (1962) defines genuine as "really being what it is said to be; actually coming from the alleged source or origin; real; true; authentic; not counterfeit or artificial". For similar definitions see Reynolds Metals Co. v. Metal Disintegrating Co., 8 F.R.D. 349, 352 (D.N.J.1948); Baldwin v. Van Deusen, 37 N.Y. 487, 492 (1868).

The bank contends that the signature in issue was "genuine" because it was made by the person whom the bank considered the co-maker, that is, by the person who appeared as co-owner of the property, and that the name "Victoria North" was not the name of any other person. The government contends on the other hand that the signature was not "genuine", but that it was a forgery because it was a signing of a fictitious name with the intent to defraud.

█ The Federal rule appears to be that forgery may be committed although the forged signature does not purport to be that of some other person if the fictitious or assumed name is used with intent to defraud. See United States Criminal Code,[1] 18 U.S.C. § 471 et seq.; 18 U.S.C. § 2314; Rowley v. United States, 191 F.2d 949 (8th Cir. 1951); Hubsch v. United States, 256 F. 2d 820 (5th Cir. 1958); Buckner v. Hudspeth, 105 F.2d 393 (10th Cir. 1939); Jones v. United States, 234 F.2d 812, 813 (4th Cir. 1956); Annot. 49 A.L.R.2d 852, 854 (1956). As stated by the Court of Appeals in Rowley:

"* * * it is well settled that the crime of forgery may be committed by the signing of a fictitious or assumed name, provided, of course, that the instrument as so completed is made with intent to defraud." (Rowley v. United States, supra, 191 F.2d at 951.)

New York law appears to be to the same effect. See Penal Law, McKinney's Consol.Laws, c. 40, § 880 et seq.; People v. Browne, 118 App.Div. 793, 103 N.Y.S. 903, 907 (1st Dept.), aff'd 189 N.Y. 528, 82 N.E. 1130 (1907); People v. Jones, 106 N.Y. 523, 13 N.E. 93 (1887); Strang v. Westchester County Nat. Bank, 235 N.Y. 68, 71, 138 N.E. 739 (1923); cf. People v. Berman, 197 N.Y.S.2d 346 (Ct. Gen.Sess. 1960).

█ If, as suggested by the bank, the co-maker's intent in using the name "Victoria North" was to conceal from her husband the fact that she owned property, no intent to defraud the United States could be found and her signature would have been "genuine" as that term is used in the Regulations. However, her plea of guilty in the Eastern District establishes conclusively that her intent was to defraud the United States by concealing the existence of a fixed obligation. Although her plea was with respect to the Credit Application and Credit Statement, the same intent must be assumed in the use of the name in signing as co-maker the note which followed the Credit Application and Credit Statement.

█ Accordingly, since the signature of Victoria North was made with intent to defraud, it is not "genuine" under Regulation 201.2 and the note did not qualify for insurance under the National Housing Act. Citizens National Trust & Sav. Bank of Los Angeles v. United States, 270 F.2d 128 (9th Cir. 1959). The government, which paid the balance due on the note to the bank, is entitled to recover the amount paid because of breach of the bank's warranty that the note was eligible for insurance. Therefore, the government is entitled to reimbursement of the amount of $1,028.56 paid by it to the bank.

---

1. Reference to the criminal definition of forgery in a civil action is proper. Home Federal Sav. & Loan Ass'n. v. Peerless Insurance Co., 197 F.Supp. 428 (N.D. Iowa 1961); International Union Bank v. National Surety Co., 245 N.Y. 368, 157 N.E. 269, 52 A.L.R. 1375 (1927); Annot. 52 A.L.R.2d 207, 208 (1957).

Plaintiff's motion for summary judgment is granted and defendant's motion for summary judgment is denied.

Settle Order on Notice.