**UNITED STATES of America**

v.

**Clarence Eugene BALES.**

**Crim. A. No. 17201.**

United States District Court
E. D. Tennessee, N. D.

July 19, 1965.

J. H. Reddy, U. S. Atty., Chattanooga, Tenn., for plaintiff.

Charles H. Brown, Knoxville, Tenn., for defendant.

ROBERT L. TAYLOR, Chief Judge.

The United States Attorney for the Eastern District of Tennessee charges that Clarence Eugene Bales, also known as Clarence Eugene Tipton, with unlawful fraudulent intent to transport, caused to be transported in interstate commerce and in fact did transport to Los Angeles, California, a falsely made and/or forged security, namely, a draft dated May 4, 1965 in the amount of $3,500.00 drawn on the Bank of America, 7th and Broadway Branch, Los Angeles, California, payable to the Park National Bank, Knoxville, Tennessee, and signed by Clarence E. Tipton, knowing the same to have been falsely made and/or forged.

To the charge contained in the information, the defendant has entered a plea of not guilty. Thus is formed the issues which would ordinarily be determined by a jury, but which, with the signed consent of the defendant, approved by his attorney and with the consent of the Government, are to be determined solely by the Court as if the Court were sitting as a jury. The defendant, by written consent, has agreed that the Court may determine all of the issues of fact in lieu of a jury and that such determination will be as binding and effective as if made by a jury.

The statute upon which the information is based is Title 18, Section 2314,

United States Code, the pertinent part of which reads:

"Whoever, with unlawful or fraudulent intent, transports in interstate \* \* \* commerce any falsely made, forged, altered or counterfeited securities \* \* \* knowing the same to have been falsely made, forged, altered, or counterfeited" is guilty of violation of the statute upon which the information is founded.

█ There is no question but that the draft which was used by the defendant in an effort to get money to which he was not entitled is an instrument or a security within the meaning of this statute. There is no question but that the defendant transported the security or draft in interstate commerce or caused the draft to be transported in interstate commerce when he signed his name or signed the name of Clarence E. Tipton to the draft and requested the bank to transmit it to the bank upon which the draft was drawn, namely, the Bank of America, 7th and Broadway Branch, Los Angeles, California.

The basic facts pointed out are not controverted. The application of the statute to these facts is highly controverted. The attorney for the defendant contends: That that which the defendant did was not a violation of the statute because the banker who handled the matter here in Knoxville recognized that no one could lose on a draft which was not to be paid by the Park National Bank of Knoxville, Tennessee (the bank that handled the transaction, or any other bank) unless and until it was honored by the Bank of America in California; and that the Bank of America would never honor the draft because the drawer bailee Clarence E. Tipton, a fictitious drawer, did not have any funds or an account in the Bank of America.

It is argued by the attorney for the defendant that that which was done by the defendant was in the nature of an empty gesture, that it was more or less a silly thing to do because the defendant should have known that he could have never gotten any money on the draft and could not have enabled anyone else to get any money on the draft, even though that was not the original expectation or intention of the defendant when he entered the bank.

According to the banker, Mr. Smith, who testified in the case as the representative of the Park National Bank of Knoxville and the one who handled the transaction for that bank, the defendant appeared at his bank on May 4, 1965 and told him that he had been robbed and that he wanted $3,500.00 and that he would draw a draft on the Bank of America in Los Angeles so that he could get the $3,500.00. Defendant told Smith that he was in the process of buying a car from a Mr. Brody and that he had to get the money as soon as possible and asked the Knoxville bank to wire the California bank so that his prospect of getting the money could be expedited. Defendant told Mr. Smith that he could call the California bank by telephone. About two days later, of course, the draft was returned with the notation "No account."

As previously indicated, this draft was signed by Clarence E. Tipton. Hence, defendant Clarence Eugene Bales was using the phony or spurious name of Clarence E. Tipton in an effort to get money in a fraudulent manner.

When defendant entered the bank he thought that he would get the money from the Knoxville bank when he signed the draft. Mr. Smith was too experienced to permit the defendant to get money by that method, since he had not known defendant prior to the time he entered the bank on or about May 4, 1965.

On or about May 14th, Mr. Parker of the Federal Bureau of Investigation interviewed the defendant after telling him of his legal rights. During the interview he frankly admitted that he had no funds in the Bank of America and that he used the phony name of Tipton presumably to get something to which he was not entitled. He told him he had registered in the St. James Hotel in Knoxville and moved from there to the

Park Hotel, also in Knoxville, where he registered in the name of Gene Tipton of San Pedro, California. There was nothing on record in the hotel to show when he checked out. He told Agent Parker about issuing two bad checks, one for $200.00 and one for $25.00. During the trial, defendant objected to Parker's testimony and the Court indicated the objection was well taken, but at that time the Court did not know the character of the defense that would be made by the defendant.

At this time the Court believes that the testimony is competent to show a pattern followed by this defendant and for whatever bearing, if any, such pattern had on the intent of the defendant to defraud the Park National Bank of Knoxville by the use of the method which he used to get $3,500.00 but which failed.

Counsel for the defendant argues that the statute does not make that which the defendant did to the Park National Bank or undertook to do an offense because the defendant by signing his name Clarence E. Tipton to the draft did not commit a forgery; second, that the signing of the draft by the defendant under the circumstances shown was not the making of a false security.

■■ We do not agree. We think there is a distinction between the word "forgery" and the words "falsely made" as used in the statute or the Congress would not have used these words. If "falsely made" has the same meaning as "forgery" as contended by counsel for the defendant, then the using of the words "falsely made" in the statute was a useless act. There may be some question as to whether that which the defendant did was a forgery, but under the particular circumstances shown in this record the Court is inclined to the view that when he signed the phony name of Clarence E. Tipton to the draft and represented to Mr. Smith that he was Clarence E. Tipton, that Clarence E. Tipton was his real name which was a false representation, that such act was forgery within the meaning of the statute. But if the Court is wrong in its interpretation of the word "forgery," there is another reason why that which the defendant did is covered by the statute.

■ When the defendant signed his name Clarence E. Tipton on the draft and represented himself to the banker as being Clarence E. Tipton, and when he asked or requested the Bank of America to charge his account with $3,500.00 when in fact he had no account in the Bank of America either in the name of Clarence E. Tipton or in his real name, Clarence Eugene Bales, he "falsely made" a security within the meaning of the statute.

In the case of Hubsch v. United States, 256 F.2d 820, 823 (C.A.5), the Court said in part:

"Forgery has been generally defined as 'the false making or materially altering, with intent to defraud, of any writing, which, if genuine, might apparently be of legal efficacy, or the foundation of legal liability.' 37 C.J.S. Forgery § 1, p. 31; 23 Am.Jur. 676, Forgery § 2; 2 Wharton's Criminal Law & Procedure 396, § 621. The case of Green v. State of Florida, Fla.1954, 76 So. 2d 645, 49 A.L.R.2d 847, is the subject of an annotation upon whether forgery may be committed by the signing of an assumed or fictitious name. 49 A.L.R.2d 852. The annotator thus summarizes the applicable rules:

'The generally accepted rule is that forgery may be committed through the use of a fictitious or assumed name, and while a considerable number of cases seem to have been decided primarily on the basis of this rule alone, other cases, while recognizing the rule, seem to turn upon the application by the court to the facts of the case of the "broad" definition or the "narrow" definition of forgery. Under the broad definition, forgery may be committed by the use of a fictitious name, with intent to defraud, so long as the instrument in question has a suf-

ficient appearance of validity upon its face to enable it to be used to the prejudice of another, while under the narrow definition, the name signed to the instrument must purport to be the signature of some person other than the one actually signing it. Thus, under the broad definition, forgery may be committed by signing the name of a fictitious person in the presence of the person defrauded, the other requisites for forgery under such definition being present, while under the narrow definition, such is not the case.' "

In the present case, the defendant used a fictitious name. He intended to defraud when he entered the bank. The instrument had a sufficient appearance of validity upon its face to enable it to be used to the prejudice of another. The Park National Bank was prejudiced to some extent on the occasion that the defendant appeared to get this money although the bank's prejudice, comparatively speaking, may have fallen within the *de minimus* doctrine since the most that the bank lost was the time consumed by Mr. Smith in dealing with the defendant and a small amount of postage and stationery used in transmitting the draft in interstate commerce.

Drafts were involved in the case of Jones v. United States, 234 F.2d 812 (C.A.4). In the case of Pines v. United States, 123 F.2d 825, 827 (C.A.8), the Court said:

"The statute merely requires 'unlawful or fraudulent intent.' " (The defendant had the unlawful and fraudulent intent.) "Such intent is specifically alleged in the indictment and characterizes the act of transportation. As a matter of pleading the indictment charged this intent and thus apprised defendant with reasonable certainty of the crime charged against him. Wolpa v. United States, 8 Cir., 86 F.2d 35. Under this statute, one might properly be found guilty of transporting an instrument, the transportation of which is forbidden by the statute, without proof that he had the intent to defraud any specific person, it being sufficient that he had the general intent to defraud any member of the public who might later become a victim to his fraud."

In the opinion of the Court, the defendant is guilty and it is accordingly the judgment of the Court.