**UNITED STATES of America**
v.
**Raymond William GREEN,**
**Defendant.**
**No. 66 Cr. 504.**

United States District Court
S. D. New York.
Aug. 11, 1966.

Robert M. Morgenthau, U. S. Atty. for the Southern District of New York, New York City, for plaintiff; Pierre Leval, Asst. U. S. Atty., of counsel.

Stephen J. Mydanick, New York City, for defendant; Seymour I. Yanofsky, New York City, of counsel.

TENNEY, District Judge.

Defendant Raymond William Green was charged in a five-count information as amended (having waived indictment) with causing the transportation in interstate commerce of "certain falsely made, forged, altered and counterfeited securities, to wit, checks drawn on The Chase Manhattan Bank, New York, N. Y., payable to cash * * * bearing the purported signature of Ray Williams as drawer, knowing the same to have been falsely made, forged, altered and counterfeited", in violation of Title 18, U.S.C. §§ 2314 and 2.

The five prosecution witnesses were: Howard Glassman and Max Gopman, a room clerk and operator, respectively, of the San Juan Hotel in Miami Beach, Florida; Mortimer Wiener, an officer of the Mercantile National Bank in Miami Beach, Florida; John McGowan of the Signature and Stop Payment Department of The Chase Manhattan Bank in New York, N. Y.; and Joel A. Sharp, a Special Agent of the Federal Bureau of Investigation.

At the close of the Government's case, I indicated to counsel that some question existed in my mind as to whether the evidence presented had made out the commission of a crime within the meaning of Sections 2314 and 2, or whether the defendant was, on the basis of the Government's proof, guilty only of obtaining money under false pretenses. Thereafter, defendant moved for a judgment of acquittal on the grounds that the Government's proof did not make out the commission of a crime under the statutes set forth in the information and above referred to, which motion was denied subject to renewal at the close of defendant's case. The defendant thereupon rested and renewed the motion on the ground originally stated and upon the further ground that the Government had failed to prove essential elements of its case beyond reasonable doubt. Decision was reserved on the renewed motion.

I find that the uncontroverted testimony of the witnesses for the Government established the following facts:

In July of 1962, defendant checked in at the San Juan Hotel in Miami Beach for approximately four weeks under the name of "Ray Williams." During this period he apparently cashed a check with the Hotel (whether drawn against a non-existent account or insufficient funds was not shown), but which he thereafter "made good" on. This incident is not the subject of the present charges.

Thereafter, on September 24, 1962, he again checked in at the Hotel for a period of between two and three weeks. During this period he cashed the five checks which are the subjects of the five counts herein. On September 28th, he requested Glassman, who also worked at the Hotel desk, to cash a check for him. Glassman had no "universal" blanks (blank checks with the name of the drawee bank omitted) so he furnished defendant with a personal check of the Hotel operator, Gopman. This was a check drawn on the Mercantile National Bank of Miami Beach, where Gopman also maintained the Hotel account. Defendant scratched out the words "Mercantile National Bank of Miami Beach, Miami Beach, Florida" and "Max Gopman" and wrote in the words "Chase Manhattan Bank, New York, New York", made out the check to "cash" in the sum of $50.00 and signed it with the name "Ray Williams". Glassman cashed the check, which was thereafter deposited in the Mercantile National Bank on October 1, 1962, for the account of "Brago Corporation, D/B/A San Juan Hotel." It was returned by the Chase Manhattan Bank on October 3, 1962, marked "No account at this location. Please advise." (Count 2.)

The same procedure was followed on September 30, 1962, although this check was for $10, and again, on October 1, this check being for $20, both being thereafter deposited in the Mercantile Bank on October 5, and returned similarly marked by the Chase Manhattan Bank on October 9 and October 8, respectively. With respect to the October 1 check, the Chase Manhattan Bank also asked for the name and branch. (Counts 3 and 4.)

The fourth check cashed with Glassman was similar to the prior three, except that it was dated October 6, was in the sum of $24, and was not deposited in the Mercantile Bank for collection until October 10, and returned by Chase Manhattan Bank on October 31, with the notation "No account." (Count 5.)

The final check cashed by defendant was cashed on October 8, 1962, this time by Gopman, and was for $50. This, however, was drawn on a "universal" form of blank check on which defendant wrote in the words "Chase Manhattan Bank, New York, New York." As in the case of the prior checks, it was made out to "cash" and signed "Ray Williams." It was deposited on October 10 and returned by the Chase Manhattan Bank on October 15, marked in the same manner as the check of September 28 (Count 1). At the time he cashed this check, defendant informed Gopman that his own checkbook had not arrived. Gopman mentioned the prior checks which defendant had cashed, whereupon defendant told him not to worry, that the checks were good. The first "universal" check filled out by defendant on this occasion was not signed just "Ray Williams" as were the prior ones, but with another name which Gopman could not now recall. When Gopman called this to the defendant's attention, the latter tore up the check and filled out another "universal" form which he signed "Ray Williams."

Gopman also testified that it was the regular practice of the Hotel only to make deposits twice a week, but there is no evidence that defendant was aware of this fact. Also, although evidence was introduced as to the dates when the checks were returned by The Chase Manhattan Bank, it is not clear when they were received back by Mercantile National Bank. The check of September 28, however, was stamped "Cancelled" on October 8, 1962; the September 30 and October 1 checks on October 10, 1962; the October 6 check bears an illegible cancellation date, and the October 8 check was cancelled on October 19. Accordingly, it seems clear that the Hotel could not have been aware of the character of the checks before October 8, the earliest cancellation date, nor is there any evidence that these were cashed with the expectation that they would be made good by defendant at some later date. Nor is there any evidence that defendant was known to Glassman and Gopman by any other name than "Ray Williams". After defendant checked out of the Hotel, presumably not long after October 8, Gopman attempted to communicate with him to advise him about the return of the checks. However, the letter was returned marked "undelivered".

Thereafter, defendant was located at Wilshire Records in New York City and, having been advised as to his rights, was questioned at the office of Wilshire Records on April 17, 1963 by Special Agent Sharp about the checks passed under the name of "Ray Williams" at the San Juan Hotel heretofore referred to. He at first denied knowing anything about these checks, but when advised that his photograph had been identified by personnel at the Hotel, admitted negotiating the checks in that name, that he had been without funds and destitute, trying to get on his feet financially at Wilshire Records so that he could make restitution on the checks. He was also questioned concerning his use of the names "Bill Bruce" and "Russ Lynch", which he stated was for "obvious reasons". No other evidence was introduced by the Government with respect to the use of these names or the purpose therefor.

Defendant declined to accompany Sharp to the New York office of the

Bureau, stating he had an important recording session that evening at Wilshire Records, but that he would appear at that office the following morning. He failed to appear. On May 8, 1963, however, he wrote the Manager of the San Juan Hotel, enclosing a personal money order in the sum of $120 "To Replace Checks Now Held" and asking the Manager to "Please Cancel Warrant."

It seems clear from the evidence hereinbefore referred to and the testimony of personnel of the Mercantile National Bank in Miami Beach, Florida, and the Chase Manhattan Bank in New York City, that defendant caused the checks hereinbefore mentioned to be transported in interstate commerce from Miami Beach, Florida, to New York City, New York, as charged in the amended information, and I so find.

The question, however, which must be answered is whether such checks were "falsely made, forged, altered or counterfeited."

> "Forgery has been generally defined as 'the false making or materially altering, with intent to defraud, of any writing, which, if genuine, might apparently be of legal efficacy, or the foundation of legal liability.' 37 C.J.S. Forgery § 1, p. 31; 23 Am.Jr. 676, Forgery § 2; 2 Wharton's Criminal Law & Procedure 396, § 621. The case of Green v. State of Florida, Fla. 1954, 72 [76] So.2d 645, 49 A.L.R. 2d 847, is the subject of an annotation upon which forgery may be committed by the signing of an assumed or fictitious name. 49 A.L.R.2d 852. The annotator thus summarizes the applicable rules:

> > 'The generally accepted rule is that forgery may be committed through the use of a fictitious or assumed name, and while a considerable number of cases seem to have been decided primarily on the basis of this rule alone, other cases, while recognizing the rule, seem to turn upon the application by the court to the facts of the case of the "broad" definition or the "narrow" definition of forgery. Under the broad definition, forgery may be committed by the use of a fictitious name, with intent to defraud, so long as the instrument in question has a sufficient appearance of validity upon its face to enable it to be used to the prejudice of another, while under the narrow definition, the name signed to the instrument must purport to be the signature of some person other than the one actually signing it. Thus, under the broad definition, forgery may be committed by signing the name of a fictitious person in the presence of the person defrauded, the other requisites for forgery under such definition being present, while under the narrow definition, such is not the case.' 49 A.L.R.2d 854."

Hubsch v. United States, 256 F.2d 820, at 823 (5th Cir. 1958).

In analyzing the facts and law herein, it is perhaps useful to first state that which this case is not.

The defendant herein did not sign his true name to checks which were drawn on a non-existent bank account in either an existing or non-existing bank.[1] Nor is it a case where the only act alleged or shown is signing a fictitious name to a check, where reliance is placed only on the signature and an alter ego or fictitious personality has not been cre-

---

1. Wright v. United States, 172 F.2d 310 (9th Cir. 1949) (In dicta at 312 the Court states: "The second class of cases, cited * * * consists of those in which the Courts have held that the making of a writing in the name of a fictitious person or under an assumed name, with intent to defraud is forgery.

[Citing cases.] * * * Clearly they are not in point. Here appellant signed his own name to the checks."); Greathouse v. United States, 170 F.2d 512 (4th Cir. 1948) (There is no doubt dicta in *Greathouse* supporting a narrow application of the statute (id. at 514). The case, however, merely involved the

ated,[2] though it is by no means clear to me that such activity would not fall within the purview of the statute.[3]

What we do have, however, is a defendant checking into the Hotel on a prior occasion under the fictitious name, remaining for a four-week period and indeed cashing a check which subsequently bounced, and then making good on the check, thereby establishing for the fictitious personality a good credit rating with the Hotel. Defendant then checks in for the period relevant herein in the same fictitious name after having, on the previous occasion, created the personality of Raymond Williams. He converses with the Hotel employees on some fifteeen occasions and indeed assures Gopman, who inquired whether the checks were good, not to worry.

Thus defendant succeeded in creating a fictitious personality of Raymond Williams, a man with good credit, who had been at the Hotel on prior occasions, and when the checks are cashed it is no doubt in reliance on the false personality thus created. This activity, I hold, is a violation of the statute if done with the intent to defraud.[4]

Based on the aforementioned facts, I have no trouble in finding that defendant's acts herein were done with the intent to defraud.

 Moreover, even assuming that the activity herein did not amount to a forgery, it nonetheless did, in my opinion, constitute a false making[5], and since I do not subscribe to the view that forgery and false making are synonymous[6], nor to the view that they are to be read conjunctively[7], but rather disjunctively,[8] I find that the statute was in any event violated.

Accordingly, I find the defendant guilty as charged.

---

defendant's signing the name of a fictitious company, below which he signed his own name (ibid.). This language is accordingly unnecessary for the decision. Moreover, a later Fourth Circuit case has more clearly defined the scope of *Greathouse* (Cunningham v. United States, 272 F.2d 791, 793, 794 (4th Cir. 1959)) and indeed is authority for the decision reached herein. (Ibid.)); Martyn v. United States, 176 F.2d 609, 610 (8th Cir. 1949); United States v. Gallagher, 94 F.Supp. 640, 642 (W.D.Pa. 1950); United States v. Sheridan, 329 U.S. 379, 381 n. 4, 67 S.Ct. 332, 91 L.Ed. 359 (1946); Melvin v. United States, 316 F.2d 647, 648 (7th Cir. 1963).

2. Hubsch v. United States, 256 F.2d 820, 821, 824, (5th Cir. 1958) (Only as to the check drawn on the Halifax District Hospital); see La Fever v. United States, 257 F.2d 271 (7th Cir. 1958) (Though a sufficient factual picture is not given); United States v. Greever, 116 F.Supp. 755, 756 (D.D.C.1953) (A sufficient factual picture is not presented; however, the Court does state that, "though there may be fraud and false pretenses there has been no forgery where the payee in accepting the check has relied upon and given credit to the person who has signed and presented the check and not to the signature itself. It is only in a case where reliance is placed on the signature as creating a valid obligation, not on the person who presents the check, that forgery has been committed." It is submitted that the above statement is apparently in conflict with the rule adopted in *Hubsch*, supra, 256 F.2d at 823, 824.)

3. Buckner v. Hudspeth, 105 F.2d 393 (10th Cir. 1939) (Held to be a forgery without discussion as to whether it was merely the signature or a whole personality); Kitchens v. United States, 272 F.2d 757, 761 (10th Cir. 1959), cert. denied, 362 U.S. 942, 80 S.Ct. 809, 4 L.Ed.2d 772 (1960) (Same); Rowley v. United States, 191 F.2d 949 (8th Cir. 1951); United States v. Bales, 244 F.Supp. 166 (E.D. Tenn.1965); United States v. First Nat. City Bank, 235 F.Supp. 894, 897 (S.D. N.Y.1964).

4. Edge v. United States, 270 F.2d 837 (5th Cir. 1959); Cunningham v. United States, 272 F.2d 791 (4th Cir. 1959); United States v. Bales, 244 F.Supp. 166 (E.D.Tenn.1965).

5. United States v. Bales, note 4, supra; Stinson v. United States, 316 F.2d 554 (5th Cir. 1963).

6. Accord, United States v. Bales, supra; Stinson v. United States, note 5, supra, and see cases therein cited.

7. Stinson v. United States, supra, adopting the view though with reservation— 316 F.2d at 556.

8. See United States v. Bales, supra.